*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

**Electronically Filed
Supreme Court
SCWC-13-0000059
15-JUN-2015
08:41 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o—

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

EDDIE A. GARCIA, Petitioner/Defendant-Appellant.

SCWC-13-0000059

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0000059; FC-CR. NO. 11-1-0288(4))

JUNE 15, 2015

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

The central issue is whether the family court erred in denying Defendant Eddie A. Garcia's Motion to Withdraw his Plea of No Contest before sentencing.

Garcia was charged with continuous sexual assault of a

minor under the age of fourteen, and abuse of a family or
household member.  Garcia initially pleaded not guilty, but
changed his plea pursuant to a plea agreement with the State of
Hawaiʻi.  Garcia agreed to plead no contest, and to serve twenty
years of imprisonment for continuous sexual assault and one year
for abuse, to run concurrently.  In turn, the State agreed to
remain silent at Garcia's minimum term hearing before the Hawaiʻi
Paroling Authority (HPA).  The family court accepted the plea
agreement, found Garcia guilty as charged, ordered the
preparation of a pre-sentence investigation (PSI) report, and
scheduled Garcia's sentencing hearing.

The Deputy Prosecuting Attorney (Prosecutor) then
submitted a letter and three exhibits to the probation office for
inclusion in Garcia's PSI report.  Prosecutor's letter commented
on the significance of the exhibits and drew conclusions that
included recommendations relevant to sentencing.  For example,
the letter described Garcia as a "master manipulator" who avoided
responsibility for his "sexually predatory" actions, and
contended that there should be "no factors" which would weigh
against imprisonment and a "lengthy" list of factors supporting
imprisonment.  (Emphasis in original).

Before sentencing, Garcia moved to withdraw his no
contest plea, arguing that Prosecutor's submission constituted a

breach of the plea agreement and was a fair and just reason to withdraw his guilty plea because Prosecutor knew the letter and exhibits would be transmitted to the HPA. The parties eventually stipulated that the submission would have been forwarded to the HPA for its consideration at the minimum term hearing. However, the family court denied the motion to withdraw because Garcia filed his motion before sentencing, and therefore the PSI report containing Prosecutor's submission could be intercepted before it reached the HPA. Although the family court denied Garcia's motion, it ordered that the PSI report be stricken from the record and kept under seal, ordered that a new PSI report be prepared by a probation officer other than the one who prepared the first report, and prohibited the State from communicating with the probation officer responsible for preparing the new PSI report.

Pursuant to Garcia's plea, the family court convicted Garcia of the two counts and sentenced him to twenty years of incarceration for continuous sexual assault and one year for abuse of a family or household member, to run concurrently. On appeal, the Intermediate Court of Appeals (ICA) concluded that the family court did not err in denying Garcia's motion to withdraw his no contest plea.

We conclude that Garcia's motion should have been

granted.  Prosecutor's submission of the letter and exhibits, despite the plea agreement, was a fair and just reason for Garcia's withdrawal of his plea, and the State had not relied upon the guilty plea to its substantial prejudice.  Accordingly, we vacate the family court's Findings and Order and the judgment on appeal of the ICA, and remand the case to the family court for further proceedings consistent with this opinion.

## I.  Background

### A.  Family Court Proceedings

On August 24, 2010, a Maui High School administrator contacted the Maui Police Department (MPD) because a fifteen-year-old student reported being sexually assaulted by her father.  Later that day, after MPD detectives interviewed the student and her mother, MPD identified Garcia, the student's father, arrested him, took him into custody, and served him with a restraining order.  Garcia confessed to hitting his daughter (Daughter) with plastic coat hangers on the backs of her legs, and later confessed in detail to sexually abusing Daughter on a regular basis since she was ten years old.  Garcia confessed that he started engaging Daughter in sexual touching when she was ten years old, and started having sexual intercourse with her when she was around twelve years old.  He confessed that at first he had sexual intercourse with her only once per week, but that the

frequency increased over time to four to six times per week.

Garcia was charged with one count of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years in violation of HRS § 707-733.6,[1] and one count of Abuse of a Family or Household Member in violation of HRS § 709-906.[2]

Garcia pleaded not guilty, but later entered a no contest plea pursuant to a plea agreement. Under the plea agreement, Garcia agreed to plead no contest, and to serve twenty years of imprisonment for continuous sexual assault and one year for abuse, to run concurrently. The State, in turn, agreed to "remain silent at the minimum term hearing [before the HPA]."

During the change-of-plea colloquy, the family court asked Garcia several questions to determine whether he understood the terms of the plea agreement.[3] When the family court asked Garcia if he could speak, read, write, and understand English,

---

[1]     HRS § 707-733.6 provides, in relevant part:

> (1) A person commits the offense of continuous sexual assault of a minor under the age of fourteen years if the person:
> (a) Either resides in the same home with a minor under the age of fourteen years or has recurring access to the minor; and
> (b) Engages in three or more acts of sexual penetration or sexual contact with the minor over a period of time, while the minor is under the age of fourteen years.

[2]     Under HRS § 709-906, it is "unlawful for any person . . . to physically abuse a family or household member[.]"

[3]     The Honorable Richard T. Bissen, Jr. presided.

and whether he understood the terms of the plea agreement, Garcia responded in the affirmative.  Garcia also responded in the affirmative when the court asked if he understood that by entering his plea of no contest, he was giving up his constitutional rights to plead not guilty and have a jury trial.  When the family court asked Garcia if he understood that he would receive a twenty-year sentence and thus was not eligible for probation, Garcia again responded in the affirmative.  The family court asked Garcia if he understood that Prosecutor agreed to "remain silent at the minimum term hearing[,]" to which Garcia responded in the affirmative; the family court did not ask Garcia to explain his interpretation of the meaning of Prosecutor's promise.  The family court accepted Garcia's no contest plea, informed the parties that the court would sentence Garcia in accordance with the terms of the plea agreement, found Garcia guilty on both counts, ordered the preparation of a PSI report, and on June 1, 2012, scheduled Garcia's sentencing hearing for August 1, 2012.

In late June and early July of 2012, Garcia's family and friends submitted letters in support of Garcia to Adult Client Services (ACS) for inclusion in Garcia's PSI report.  In a letter dated July 1, 2012, Daughter asked the court to consider lessening Garcia's sentence because her mother was struggling to

take care of four children and needed Garcia's financial support.

On July 23, 2012, Prosecutor submitted a letter and three accompanying exhibits to ACS for inclusion in Garcia's PSI report.  Prosecutor's letter explained that the State understood that Garcia's sentence was predetermined by the plea agreement, but nevertheless wanted "to point out some aggravating factors[.]"

Prosecutor's letter described the contents and commented on the significance of the three exhibits submitted to ACS along with the letter.  The letter drew attention to Garcia's confession, which was attached as Exhibit 1, that Garcia began using Daughter as his sexual partner when she was ten years old and continued doing so "on an almost daily basis" until her friends reported the conduct when Daughter was fifteen.  The letter pointed out that the types and frequency of sexual abuse recounted by Garcia in his confession matched Daughter's statements.  The letter stated that even after Garcia confessed, he "took every available route to avoid having to take responsibility for his aberrant and sexually predatory actions." (Emphasis in original).  The Prosecutor added that Garcia "pretended to be this caring parent who wanted to make it easy on his daughter and accept responsibility from the beginning with the police, but true to his real character, that did not last

-7-

long."  The letter continued by stating that Garcia "soon pulled the 'I don't speak English card,'" and requested an interpreter for trial even though the record, which included a letter written by Garcia in a prior case and which Prosecutor attached as Exhibit 2, demonstrated that Garcia had an "excellent level of command of English[.]"  Prosecutor argued that Garcia "demonstrated that he is a master manipulator, who cannot be trusted."  (Emphasis in original).

Prosecutor's letter further noted that a letter written by Daughter, which was attached as Exhibit 3, revealed that Garcia violated the August 24, 2010 restraining order when he asked his wife to ask Daughter to write him a letter about her feelings.  Prosecutor stated that "[o]f course" this was a violation of the restraining order, but this violation was not charged, and this violation demonstrated that Garcia was "still manipulating everyone."

Prosecutor's letter concluded that the three exhibits revealed that Garcia caused his family, and especially Daughter, to experience severe hardships.

The letter asserted that "[g]iven the facts of this case, . . . Garcia should have a lengthy list of factors supporting imprisonment[,]" and "that there should be no factors listed to withholding imprisonment."  (Emphasis in original).

On July 25, 2012, Garcia's defense counsel moved to withdraw as counsel, because Garcia asserted to the court that the defense counsel tricked him into changing his plea. At the hearing on the motion to withdraw, Garcia testified that he wanted a new attorney to help him file a motion to withdraw his no contest plea. Prosecutor opposed the defense counsel's motion to withdraw, arguing that Garcia's allegation that he was tricked was an attempt to manipulate the system. The family court granted the motion, but clarified that it was doing so only because it found that the relationship between Garcia and his public defender could not be repaired. The family court explained that a new attorney would be appointed to appear at sentencing, but not to help Garcia file a motion to withdraw his plea because Garcia had already changed his plea and been found guilty.

On September 13, 2012, with the assistance of a new attorney (Dunn),[4] Garcia filed a motion to withdraw his no contest plea on the grounds that: "(1) the State violated its plea agreement with [Garcia]; and (2) [Garcia's] No-Contest plea was not voluntarily made." Garcia explained in a declaration

---

[4]  Christopher M. Dunn, Esq., a court-appointed private attorney, represented Garcia for the filing of his motion to withdraw his no contest plea. The motion was filed along with a declaration by Garcia and a memorandum of law.

that Dunn informed him that Prosecutor breached the plea
agreement by submitting a "scathing letter with attached
exhibits" for inclusion in the PSI report, because Prosecutor
knew that the submission would be transmitted to the HPA.  He
argued this constituted a fair and just reason for withdrawal and
that the State had not relied upon his guilty plea to its
substantial prejudice.  Garcia also explained that he told his
public defender that he did not want to enter into the plea
agreement because he did not understand its terms, but entered
into the agreement nonetheless because his public defender told
him "that failure to change [his] plea as scheduled would be
perceived as an insult to the Court[.]"

In opposition to Garcia's motion to withdraw his no
contest plea, the State argued that Garcia did not meet his
burden to show a fair and just reason for withdrawal of his plea,
in pertinent part because Prosecutor's "letter complies with the
plea agreement and does not make any recommendation for a minimum
term to the [HPA]."  The State also argued that if the court
found that Prosecutor's letter did breach the plea agreement,
"the remedy would be to strike the letter from the PSI [report]
rather than allow the Defendant to withdraw his plea of no-
contest."  Finally, the State argued that the record established
that Garcia understood the terms of the plea agreement and that

his plea was voluntary.

On November 14, 2012, the State filed a declaration of Prosecutor in support of the State's memorandum in opposition to Garcia's motion to withdraw his no contest plea (Declaration). In the Declaration, Prosecutor stated that the plea agreement related only "to the minimum term hearing, not to any sentencing matters," and that the State had "every right to make comments for inclusion in the [PSI] report which are relevant to sentencing." Prosecutor also declared that "under the plain language analysis, there simply was no violation of the plea agreement[.]"

At the hearing on Garcia's motion to withdraw his no contest plea and sentencing, the family court accepted the parties' stipulation that PSI reports are forwarded to the HPA after sentencing and are available for the HPA's consideration at minimum term hearings, and took judicial notice of the PSI report containing Prosecutor's submission.

Also at the hearing, Dunn argued that Prosecutor's letter was a breach of the plea agreement because it was intended for the HPA. Dunn also argued that because the State "breached the only meaningful promise that [it] made in [its] plea agreement[,]" Garcia met his burden to present a fair and just reason for granting his motion to withdraw his no contest plea.

-11-

Dunn further argued that Garcia's plea was not voluntary because it was made in response to the public defender's comment that the judge would be upset if Garcia refused the plea offer and thus Garcia entered the plea agreement out of fear of reprisal.

In response, the State argued that there was no breach of the plea agreement, and even if a breach occurred, the family court should deny Garcia's motion and either: (1) strike just Prosecutor's submission if the court determines that the submission did not influence the probation officer's conclusion in the PSI report that there were "zero mitigating circumstances and eighteen circumstances for prison[,]" or (2) strike the entire PSI report "and start all over again[.]" The State also argued that the record reveals that Garcia "voluntarily, knowingly, and intelligently entered into his change of plea."

The family court engaged Dunn in the following discussion:

> THE COURT: But on that issue alone of the letter being contaminating -- somehow contaminating the Court, I will say that it may have had an influence on this, perhaps. And that it would likely have an influence on [HPA] if it got there, but that it has not. And that the Court can order that a new [PSI report] be prepared without the influence of the State's letter.
>     And, in fact, that is what the Court would intend to do. Does that satisfy, at least, that issue that the defense has argued?
>
> MR. DUNN: I agree with you that, that is a potential remedy that the Court has.
>
> . . .

MR. DUNN:  . . . I'm not conceding it, but let's call it an attempted breach.

THE COURT:  Okay.

MR. DUNN:  So an attempted breach maybe doesn't rise to manifest injustice, but isn't it a fair and just reason to take it back when the very person that you're bargaining with --

THE COURT:  Right.

MR. DUNN:  -- has attempted to undermine the only meaningful provision in your agreement?  So that's a fair and just reason to take this thing back.

THE COURT:  I'm not making a finding that they have undermined.

MR. DUNN:  They attempted to.

THE COURT:  I'm not even agreeing that they have attempted to undermine.  They have obviously put in a letter that they could have said -- could have made all these arguments at the sentencing anyway.

MR. DUNN:  Right.

THE COURT:  That would become a record.  Now, we both know the transcripts are not ordinarily ordered by the [HPA].  They're only received if one of the two parties in this case ordered them.  I couldn't imagine either party doing that.

MR. DUNN:  Well, it would be a breach by the State --

THE COURT:  I can't imagine the defense would do that.

MR. DUNN:  Right.

THE COURT:  But it's public record.  It can be reported in a variety of ways, to the press, if somebody's ordering transcripts, whatever.  The victim can come forward.  The victim can share whatever the victim wishes to share at the hearing.
     So I'm still simply saying there is a remedy, however -- whatever intentions either side wants to argue was attached to this letter, the fact is that there's been no breach is the Court's findings.  There has been no breach.
     The Court can prevent this from going to -- and honoring the agreement that was bargained for by both sides, and that is to strike the letter and to order that a new [PSI report] be prepared[.]

The family court then concluded that based on the record and the hearings, Garcia lacked credibility and thus his argument that he did not understand or voluntarily accept the terms of the plea agreement was "not believable." The court explained that under the terms of the plea agreement:

> [Garcia] was going to be able to have a clear argument to make at the minimum term hearing without the State being there or making a suggestion. That was the benefit in this case. And he can still get that benefit if the Court orders a new [PSI report]. So there was something to be gained.
>
> What also turned this case was a motion in limine of the voluntariness hearing. The Court ruled that the statements he made and the full confession that he gave in these cases were voluntarily made. And sometimes defendants don't want facts to come out publicly that are embarrassing. . . .
>
> [D]efense seems to argue that the only explanation for himself accepting this deal was his attorney forcing him into it, and I don't believe that to be true.

The family court then denied Garcia's motion to withdraw his no contest plea. The family court also ordered that the PSI report containing Prosecutor's submission be stricken from the record, stated that the PSI report would continue to be kept under seal, ordered that a new PSI report be prepared by a probation officer other than the one who prepared the first PSI report, and prohibited the State from communicating with the probation officer responsible for preparing the new PSI report.

On January 8, 2013, the family court entered its "Findings and Order Denying Defendant's Motion to Withdraw No Contest Plea" (Findings and Order). The Findings and Order

-14-

includes the following findings:

> 1. The July 23, 2012, letter written by [Prosecutor] addressed to Senior Probation Officer, . . . was incorporated into [Garcia's PSI] Report . . . ;
>
> 2. [Garcia] has not been sentenced and therefore, the [PSI Report] has not been used by the Court, nor has the [PSI Report] been sent to [HPA], for its consideration in setting a minimum term in this case, HENCE, the Department of the Prosecuting Attorney has not made any indirect minimum term arguement [sic] to the [HPA];
>
> 3. The State of Hawaiʻi, did not breach the plea agreement between the parties, by attempting to indirectly communicate with the [HPA];

The Findings and Order also found that Garcia was not credible, and his argument that his no contest plea was not voluntary was unpersuasive.  On January 18, 2013, the family court entered its Judgment finding Garcia guilty as charged and sentencing Garcia to twenty years of imprisonment for the sexual assault of Daughter, and one year for the abuse of Daughter, to run concurrently.  Garcia timely appealed.

**B.   ICA Appeal**

Garcia argued that the family court erred in denying his motion to withdraw his plea because pursuant to Prosecutor's agreement to "remain silent at the minimum term hearing" before the HPA, the "prosecution was not entitled to make any more factual assertions or comments on the record."  Garcia also argued that Prosecutor breached her "promise to 'remain silent'" when Prosecutor attempted to circumvent the terms of the plea

agreement by "writing an inflammatory letter headed to the HPA." Garcia explained that the agreement was breached when "the letter became part of the [PSI] report" because after sentencing, the HPA "receives the [PSI] report before determining an inmate's minimum term."

Garcia further argued that the "family court's finding that no breach occurred because the letter was never submitted to the HPA makes no sense." Garcia explained that his "timely objection to the letter does not change the simple fact that the prosecution broke its promise." He noted that because he moved for withdrawal of his guilty plea before sentencing, the family court should have granted the motion if he presented a fair and just reason for withdrawal and the State had not relied upon his guilty plea to its substantial prejudice. And finally, Garcia argued that because the family court erred in concluding that Prosecutor did not breach the plea agreement, it also erred in failing to consider whether Garcia was entitled to his preferred choice of remedies for the alleged breach -- withdrawal of his no contest plea and a jury trial.

In its answering brief, the State argued that the prosecution did not breach the plea agreement because the PSI report containing Prosecutor's submission did not reach the HPA. The State also argued that the prosecution did not breach the

spirit of the plea agreement because Garcia suffered no prejudice as a result of Prosecutor's submission.  The State further argued that even if the prosecution did breach the spirit of the plea agreement, the breach did not violate Garcia's fundamental rights because Prosecutor's submission did not reach the HPA and thus the HPA was not influenced by the submission.

In reply, Garcia argued that "[i]t is irrelevant whether the HPA received the offensive letter" because the agreement induced Garcia to agree "to a twenty-year prison sentence and [to give] up his constitutional right to a jury trial."  Garcia also argued that the prosecution has "no authority supporting its position that a breach can somehow be determined by ignoring the language of the agreement and prosecutor's subsequent conduct and focusing only on the results of her conduct."  Garcia explained that the State's approach affords Garcia "no opportunity . . . to file a motion to withdraw his no-contest plea prior to sentencing" and thus is inconsistent with Rules 11(f)(2)[5] and 32(d)[6] of the Hawaiʻi Rules of Penal

---

[5]     Rule 11(f)(2) (2015) of Hawaiʻi Rules of Penal Procedure (HRPP) provides, in relevant part:  "Failure by the prosecutor to comply with [a plea] agreement shall be grounds for withdrawal of the plea."

[6]     HRPP Rule 32(d) (2015) provides:

> A motion to withdraw a plea of guilty or of nolo contendere may be made before sentence is imposed or imposition of sentence is suspended; provided that, to correct manifest injustice the court, upon a party's motion submitted no later than ten (10) days after

Procedure (HRPP), and with the "liberal approach" taken by this court when a defendant makes a motion to withdraw his plea before sentencing.

In a Summary Disposition Order (SDO), the ICA held that the "family court correctly found the State did not breach the plea agreement," and in doing so, implicitly agreed with the family court's conclusion that a breach did not occur because the PSI report containing Prosecutor's letter and accompanying exhibits did not reach the HPA. The ICA declined to address Garcia's other contentions because they were "premised upon Garcia's contention that the State breached the parties' plea agreement." We accepted Garcia's timely application for writ of certiorari.

## II. Standards of Review

This court evaluates a defendant's motion to withdraw his plea "under either of two established principles." State v. Merino, 81 Hawaiʻi 198, 223, 915 P.2d 672, 697 (1996) (quoting State v. Jim, 58 Haw. 574, 574-75, 574 P.2d 521, 521-22 (1978)).

---

imposition of sentence, shall set aside the judgment of conviction and permit the defendant to withdraw the plea. At any later time, a defendant seeking to withdraw a plea of guilty or nolo contendere may do so only by petition pursuant to Rule 40 of these rules and the court shall not set aside such a plea unless doing so is necessary to correct manifest injustice.

(Emphasis added).

> Where the request is made after sentence has been imposed, the "manifest injustice" standard is to be applied. But where the motion is presented to the trial court before the imposition of sentence, a more liberal approach is to be taken, and the motion should be granted if the defendant has presented a fair and just reason for his request and the State has not relied upon the guilty plea to its substantial prejudice. What the manifest injustice rule seeks to avoid is an opportunity for the defendant to test the severity of sentence before finally committing himself to a guilty plea. But the risk of prejudice to the State and to the efficient administration of criminal justice is much less apparent where the withdrawal is requested before final judicial action is taken on the defendant's plea.

Jim, 58 Hawai'i at 576, 574 P.2d at 522-23 (citations and quotations omitted).

"The denial of an HRPP [Rule] 32(d) motion to withdraw a plea of nolo contendere, or 'no contest,' prior to the imposition of sentence[,] is . . . reviewed for abuse of discretion." Merino, 81 Hawai'i at 211, 915 P.2d at 685. A trial court abuses its discretion when it "clearly exceed[s] the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Id.

### III. Discussion

Because Garcia moved to withdraw his guilty plea before sentencing, this court must determine whether Prosecutor's submission of the letter and three exhibits for inclusion in Garcia's PSI report constitutes a fair and just reason for his request to withdraw his guilty plea, and whether the State relied on the plea to its substantial prejudice. See Jim, 58 Hawai'i at

-19-

576, 574 P.2d at 522-23.

Accordingly, we must consider the effect of Prosecutor's submission in light of the State's agreement to "remain silent at the minimum term hearing [before the HPA]." In exchange for this agreement, Garcia agreed to forego his right to a jury trial and to serve concurrent sentences of twenty years and one year.

Garcia argues that "it should have been obvious to the prosecution that the PSI report was not for the sentencing court's benefit, but for the HPA." Garcia further argues that the State's agreement to "remain silent at the minimum term hearing [before the HPA]" prohibited both communications at the minimum term hearing and communications that would reach the HPA prior to the hearing. Garcia also argues that if the plea agreement is at all ambiguous, its meaning must be construed in Garcia's favor under State v. Nakano, 131 Hawaiʻi 1, 313 P.3d 690 (2013). And, Garcia implicitly argues that even if Prosecutor did not breach the literal terms of the plea agreement, the submission was a breach of the spirit of the plea agreement.

The State did not file a response to Garcia's application, but argued in its answering brief in the ICA that Prosecutor's submission was not a breach because it did not reach or influence the HPA, and because Garcia suffered no prejudice as

a result of Prosecutor's submission.  The State also conceded that under Hawaiʻi law, the State cannot attempt to accomplish indirectly what it had promised not to do directly.

It is well settled in this jurisdiction that "[w]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration [for the plea], such promise must be fulfilled."  Nakano, 131 Hawaiʻi at 7, 313 P.3d at 696 (quotations omitted) (emphasis in original) (citing Santobello v. New York, 404 U.S. 257, 262 (1971)); see also State v. Adams, 76 Hawaiʻi 408, 414, 879 P.2d 513, 519 (1994) ("It is well settled that the terms of a plea agreement, which serve as the inducement for entering a plea, must be fulfilled.") (citing State v. Costa, 64 Haw. 564, 566, 644 P.2d 1329, 1331 (1982), and Santobello, 404 U.S. at 262); Yoon, 66 Haw. at 347, 662 P.2d at 1115 (holding that due process requires that the State fulfill its end of the bargain if the defendant's plea "rested in any significant degree on a promised resolution") (citing Santobello, 404 U.S. at 262).

When the State enters a plea agreement, "the liberty of the defendant[,] . . . the honor of the government, public confidence in the fair administration of justice, and the efficient administration of justice[,]" are all at stake.  People v. Sanders, 191 Cal. App.3d 79, 87 (Cal. Ct. App. 1987)

-21-

(quotation marks and brackets omitted). These concerns are heightened given the prevalence of plea bargaining in the resolution of cases. Indeed, plea bargaining "is not some adjunct to the criminal justice system," in some sense "it <u>is</u> the criminal justice system." <u>United States v. Kentucky Bar Assoc.</u>, 439 S.W.3d 136, 140 (Ky. 2014) (emphasis in original) (<u>quoting Missouri v. Frye</u>, 132 S.Ct. 1399, 1407 (2012)). As one court has noted, the integrity of a plea agreement is a serious matter because

> [i]f a defendant cannot rely upon an agreement made and accepted in open court, the fairness of the entire criminal justice system would be thrown into question. No attorney . . . could in good conscience advise his client to plead guilty and strike a bargain if that attorney cannot be assured that the prosecution must keep the bargain and not subvert the judicial process through external pressure whenever the occasion arises.

<u>State v. Tourtellotte</u>, 88 Wash.2d 579, 584 (1977); <u>see</u> <u>United States v. Peglera</u>, 33 F.3d 412, 414 (4th Cir. 1994) ("Because a government that lives up to its commitments is the essence of liberty under law, the harm generated by allowing the government to forego its plea bargain obligations is one which cannot be tolerated.").

Additionally, if the integrity of plea agreements is not enforced, defendants may lose trust and confidence in the defense counsel who recommended the plea agreement. This outcome would directly undercut the attorney-client relationship. <u>See</u>

-22-

State v. Gaylord, 78 Hawaiʻi 127, 141, 890 P.2d 1167, 1181 (1995) (the attorney-client relationship requires "the highest degree of trust and confidence").

Prosecutor's submission to the ACS was inconsistent with Prosecutor's promise to "remain silent at the minimum term hearing" before the HPA. There is no dispute that Prosecutor submitted the letter and three exhibits to ACS for inclusion in Garcia's PSI report even though Prosecutor knew the family court planned to sentence Garcia to a twenty-year term in accordance with the plea agreement. Moreover, the parties stipulated that the PSI report would have been forwarded to the HPA after sentencing and that the report would have been available for consideration as part of the minimum term hearing.

This is not a situation in which the State inadvertently shared information that it was prohibited from sharing. Rather, the eventual dissemination of the letter to the HPA would be a predictable result of Prosecutor's actions.

Prosecutor's submission contained not just factual information that Prosecutor might reasonably be expected to convey to the sentencing court, see HRS § 706-702 (a pre-sentence report "shall include," e.g., criminal history, economic status, and information regarding impact on the victim), but also drew conclusions from this factual information and presented argument

attacking Garcia's character.  For example, along with permissibly submitting the transcript of Garcia's confession, Prosecutor argued:  that Garcia "is a <u>master manipulator</u> who cannot be trusted," that "Garcia should have a lengthy list of factors supporting imprisonment" and "<u>no</u> factors" for withholding imprisonment," that Garcia "took every available route to avoid having to take responsibility for his aberrant and <u>sexually predatory</u> actions," that Garcia "pretended to be this caring parent who wanted to make it easy on his daughter and accept responsibility from the beginning with the police, but true to his real character, that did not last long," and that Garcia "soon pulled the 'I don't speak English card.'"  (Emphasis in original).

Although the family court's intervention protected Garcia from being prejudiced at the HPA, it could not undo the impact on Garcia's perception of the integrity of the system and the trustworthiness of the government and his own counsel.

The State now concedes:  "If that letter had gotten into the hands of the . . . HPA I would take the position yes that would be a breach."  Oral Argument at 33:34-33:52, <u>State v. Garcia</u>, No. SCWC-13-0000059, <u>available at</u> http://state.hi.us/jud/oa/14/SCOA_090414_13_059.mp3.  Moreover, the State concedes that but for the filing of Garcia's motion and

the family court's intervention, Prosecutor's submission would have reached the HPA.

The parties have focused much of their analysis on whether the Prosecutor breached the plea agreement, given the remedial steps taken by the family court. However, we need not resolve the question of whether a breach was consummated. Rather, in motions to withdraw a plea prior to sentencing, appellate courts take a liberal approach and apply the "fair and just" standard. Jim, 58 Haw. at 576, 574 P.2d at 522-23; see State v. Gomes, 79 Hawaiʻi 32, 36, 897 P.2d 959, 963 (1995); Adams, 76 Hawaiʻi at 411, 879 P.2d at 516; Merino, 81 Hawaiʻi at 223, 915 P.2d at 697.

> [T]he motion should be granted if the defendant has presented a fair and just reason for his request and the State has not relied upon the guilty plea to its substantial prejudice.

Jim, 58 Hawaiʻi at 576, 574 P.2d at 522-23.

For the reasons discussed above, Prosecutor's submission constituted a "fair and just" reason for Garcia's request to withdraw his plea. To the extent that the agreement was ambiguous by not expressly prohibiting Prosecutor from submitting argumentative material in the PSI that would violate the agreement if conveyed directly to the HPA, the ambiguity must be construed against the State. See Nakano, 131 Hawaiʻi at 7, 313 P.3d at 696. Put another way, if the State wanted to reserve

the right to present such argument to the court as part of the PSI, it should have expressly said so in the agreement.

Further, the State did not satisfy its burden, <u>Gomes</u>, 79 Hawaiʻi at 40, 897 P.2d at 967, to demonstrate substantial prejudice if the motion to withdraw the plea was granted.

Accordingly, the family court abused its discretion in denying Garcia's motion to withdraw his guilty plea.

## IV.  Conclusion

For the foregoing reasons, we vacate the judgment on appeal of the ICA and the family court's January 8, 2013 Findings and Order, and remand to the family court for further proceedings consistent with this opinion.

| | |
|---|---|
| Benjamin E. Lowenthal<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Richard K. Minatoya<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

