Electronically Filed
Supreme Court
SCWC-12-0000287
06-JUN-2019
07:57 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

WALTER GUITY,
Petitioner/Defendant-Appellant.

_____

SCWC-12-0000287

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0000287; CR. NO. 11-1-0288 and FC-CR. NO. 10-1-0022)

June 6, 2019

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY WILSON, J.

After having entered a plea agreement, but prior to sentencing, Petitioner/Defendant-Appellant Walter Guity ("Guity"), representing himself, orally moved in the Circuit Court of the First Circuit ("circuit court") to withdraw guilty pleas in his global plea agreement to two criminal offenses—one charged in the family district court ("family court case") that

was legally impossible for him to have committed under the law in effect at the time of his plea. The second offense was charged in the circuit court ("circuit court case"). At the conclusion of the hearing, the circuit court denied Guity's oral motion to withdraw pleas in both cases and entered a sentence pursuant to the plea agreement.

Because both of Guity's pleas were encompassed in a global plea agreement, and the Intermediate Court of Appeals ("ICA") correctly concluded that Guity was entitled to withdraw his plea in the family court case, the ICA should have also held that Guity was permitted to withdraw his plea in the circuit court case. Accordingly, we vacate the ICA's judgment on appeal, the circuit court's judgments, and the circuit court's order denying Guity's motion to withdraw pleas and remand to the circuit court with instructions to accept Guity's withdrawal of both pleas.

## I. Background

In May 2010, Guity was charged in the family court with multiple counts relating to an incident with his wife, including attempted first-degree sexual assault. In March 2011, while awaiting trial in the family court case, Guity was charged in the circuit court with multiple counts of second-degree and fourth-degree sexual assault in an incident involving another woman.

2

In May 2011, Guity entered a plea agreement in the circuit court encompassing both cases.  In that agreement, he pleaded guilty to the reduced charge of third-degree sexual assault in the family court case, and pleaded guilty to second-degree sexual assault in the circuit court case.  In return, the State agreed to dismiss the remaining counts in both cases.

At the time of the plea agreement, it was legally impossible for Guity to have committed the crime to which he had pleaded guilty in the family court case relating to his wife.  Hawai'i Revised Statutes ("HRS") § 707-732(1)(f) (2014) (defining sexual assault in the third degree as "knowingly, by strong compulsion," having "sexual contact with another person"); HRS § 707-700 (2014) (defining "sexual contact" as "any touching, other than acts of 'sexual penetration', of the sexual or other intimate parts of a person not married to the actor" (emphasis added)).[1]  As the transcript of the change of plea hearing makes clear, the State, Guity, and the court accepting his plea were all aware at the time of his plea that third-degree sexual assault excluded an offense involving a spouse.[2]

---

[1]    The legislature replaced the phrase "of a person not married to the actor" with "another" in the definition of "sexual contact" in 2016. 2016 Haw. Sess. Laws Act 231, § 32 at 753.

[2]    During the hearing, the court said, "sexual assault in the third degree is actually defined by the Legislature to exclude sexual contact, under this statute, with someone you're married to.  But in accordance with the plea bargain you have agreed to plead to this offense.  Is that -- you

(continued . . .)

## A. Circuit Court Proceedings

Guity was represented by private counsel during his plea negotiations and at his change of plea hearing. He subsequently became dissatisfied with his attorney, who withdrew. Guity was appointed a deputy public defender; he, too, subsequently withdrew from representing Guity. On December 10, 2011, Guity notified the circuit court he wanted to represent himself.

On January 17, 2012, the circuit court held a hearing in which it inquired into Guity's desire to represent himself on a motion to withdraw his guilty pleas.[3] Guity's explanation of his motives and readiness to represent himself was ambiguous. For example, at the very end of the hearing, the circuit court asked, "I take it that you're making a voluntary, knowing, and intelligent decision that you do not want [court-appointed counsel] to actually handle this, or you do not want to exercise your right to a lawyer and you want do it yourself." In response to that question, Guity stated, "I need a lawyer, your Honor." The circuit court responded, "[l]ook, I'm not going to

_____

(. . . continued)

understand all of that?" Guity responded, "[y]es, Your Honor." The court then asked, "[a]re you giving up your right to be excluded from that statute by legislative language?" Guity responded, "[y]es, Your Honor." The court then asked, "[d]o you have any questions about that?" Guity responded, "[n]o, Your Honor."

[3] The Honorable Karen S.S. Ahn presided.

play games, Mr. Guity."  Nonetheless, the court agreed to allow him to represent himself with the assistance of stand-by appointed counsel.  Yet the court's permission for Guity to represent himself was itself ambiguous, since the court closed the hearing by saying, "[i]f time is your problem, I'm denying your motion.  Let's proceed."[4]

Three days later, on January 20, 2012, the circuit court heard Guity's oral motion to withdraw his guilty pleas. He argued the motion pro se, with court-appointed counsel operating as stand-by counsel.  Guity argued, inter alia, that during the plea negotiations (and at the change of plea hearing) his private attorney had failed to explain to him the nature of the law, including the fact that he was pleading guilty to a crime he could not legally commit in the family court case.  The circuit court denied Guity's motion to withdraw his guilty pleas.  The court later sentenced him to a one-year term of imprisonment for the family court case, an eighteen-month term of imprisonment for the circuit court case, and concurrent five-year terms of probation for each count pursuant to the plea agreement.

---

[4]     Although the court said at the end of the hearing, "I'm denying your motion[,]" the court probably meant that it was granting Guity's motion to proceed pro se in his oral motion to withdraw pleas, but denying Guity's appointed counsel's motion to withdraw from representing Guity.  That left Guity's appointed counsel in the position of "stand-by counsel" for purposes of Guity's motion to withdraw pleas.

**B. The ICA's Memorandum Opinion**

The ICA's opinion first discussed Guity's challenge to the factual basis of the pleas to the charge in the family court case. The ICA held that the circuit court had "clearly violated [Hawai'i Rules of Penal Procedure ("HRPP")] Rule 11(g)" because it knew "there was no factual basis" for that plea, and it "affirmatively knew that it was legally impossible for Guity to have committed this offense." State v. Guity, No. CAAP-12-0000287, 2016 WL 6427681, at \*7 (App. Oct. 31, 2016) (mem.). Given that the plea in the family court case violated HRPP Rule 11(g), the ICA concluded that the circuit court "should not have accepted his guilty plea to this offense." Id. The ICA next addressed the State's argument that Guity had waived the defect in his guilty plea in the family court case. The ICA observed that allowing a defendant to plead guilty to a crime he could not legally commit "implicates the integrity of the judicial system." Id. at \*8. The court concluded that allowing such a plea "would be contrary to the truth-seeking function of the criminal justice system and would serve to undermine the integrity of the system and public confidence in the system." Id. For that reason, "Guity's challenge to his guilty plea could not be barred by waiver." Id.

6

The ICA also concluded that the circuit court erred in allowing Guity to represent himself at the motion to withdraw his guilty pleas because the circuit court had failed to first obtain a valid waiver of his right to counsel. Id. "Because Guity did not validly waive his right to counsel prior to the hearing, the results of the hearing were tainted and the Circuit Court's rulings cannot stand." Id. at *10.

The ICA vacated the judgment in the circuit court case and vacated, as well, the judgment in the case involving Guity's plea in the family court case. Id. at *10. The ICA found that Guity's plea in the latter, to a crime he could not legally have committed, could never form part of a valid plea agreement. Id. at *8. Accordingly, the ICA remanded to the circuit court with instructions to permit Guity to withdraw that plea. Id. at *10. In contrast, the ICA found that Guity's plea in the circuit court case was an otherwise valid plea tainted only by the fact that the record did "not reflect a valid waiver of counsel" at the time he appeared pro se to argue his motion to withdraw guilty pleas. Id. at *8.

Thus, with respect to Guity's plea to a legally impossible crime, the ICA remanded to the circuit court with instructions to permit Guity to withdraw that plea. Id. at *10. But with respect to Guity's plea in the circuit court case, the

7

ICA remanded to the circuit court with instructions to allow the State to exercise one of two options. Id.

The first option allowed the State to enforce the remainder of the plea agreement involving the circuit court case. Id. If the State elected that first option, Guity would be entitled to a new hearing on his motion to withdraw the remaining guilty plea. Id. If his motion to withdraw plea in the new hearing was granted, Guity would be able to withdraw the plea. If, however, his motion in the new hearing was denied, Guity would be held to his plea in the circuit court case. The second option would allow the State to withdraw from the plea agreement altogether and pursue all the original charges in both cases. Id.

While it is not entirely clear, the ICA appeared to base its articulation of those two options on remand concerning the plea in the circuit court case upon the premise that "the State did not breach the plea agreement" and therefore as the non-breaching party it "retains" those two options. Id. The ICA provided no explanation, and no citation to any legal authority, justifying or explaining its adoption of those two options.

## II. Standard of Review

A trial court's denial of a motion to withdraw a plea made prior to sentencing is reviewed for abuse of discretion.

State v. Garcia, 135 Hawai'i 361, 368, 351 P.3d 588, 595 (2015). A court abuses its discretion when, among other things, it "has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Id. (quoting State v. Merino, 81 Hawai'i 198, 211, 915 P.2d 672, 685 (1996)).

### III.  Discussion

The ICA vacated both convictions arising from Guity's guilty pleas.  First, the ICA vacated the judgment in the family court case based on Guity's plea to a crime he could not have legally committed.  Guity, 2016 WL 6427681, at *10.  Second, with respect to his plea in the circuit court case, the ICA concluded that Guity had not adequately waived his right to counsel before proceeding to argue unsuccessfully his pro se motion to withdraw pleas.  Id. at *8-*10.

Guity challenges the ICA's failure to direct the circuit court to grant his motion to withdraw his plea in the circuit court case.  Instead, the ICA's remand instructions require the circuit court to rehear the motion to withdraw the plea, leaving the possibility open that the circuit court could deny Guity's motion to withdraw the remaining plea.  Id. at *10. In that event, the State would retain the option of holding him to his plea on the remaining charge or withdrawing from the agreement.

We conclude that the circuit court abused its discretion in denying Guity's motion to withdraw his plea in the circuit court case.  When a motion to withdraw a plea is made prior to sentencing, "a more liberal approach is to be taken, and the motion should be granted if [1] the defendant has presented a fair and just reason for his request and [2] the State has not relied upon the guilty plea to its substantial prejudice."  Garcia, 135 Hawai'i at 368, 351 P.3d at 595 (emphasis added) (quoting State v. Jim, 58 Haw. 574, 576, 574 P.2d 521, 523 (1978)); see also State v. Sanney, 141 Hawai'i 14, 22, 404 P.3d 280, 288 (2017) ("After entry of a plea of guilty or nolo contendere and before sentence, the court should allow the defendant to withdraw the plea for any fair and just reason." (emphasis added) (quoting Standard 14-2.1. Plea Withdrawal and Specific Performance, ABA Standards for Criminal Justice (3d ed. 1999))).

In its written "Order Denying Oral Motion to Withdraw Guilty Plea," the circuit court found no fair and just reason to permit Guity to withdraw his pleas in both cases:

> Based upon the credible evidence, and all reasonable inferences to be drawn therefrom, the Court finds that no fair and just reason has been shown to permit Defendant to withdraw his guilty pleas in the two cases.  The Court confirms that Defendant voluntarily, intelligently, and knowingly entered his pleas of guilty on May 18, 2011.

In response to Guity's challenge to the circuit court's finding, the State conceded in its briefing before the ICA that, because

10

it could not show substantial prejudice, the only remaining question before the ICA was the "fair and just reason" requirement, which the State characterized as the question "whether the Defendant entered the plea knowingly, intelligently, and voluntarily."

Both the circuit court in its order, and the State in its briefing, appear to confuse a "fair and just reason" for withdrawing a plea with whether a defendant attempting to withdraw a plea validly waived or relinquished his or her constitutional right to trial (or other right) when entering the plea. It is true that the failure of a defendant to enter a guilty plea knowingly, intelligently, and voluntarily will amount to a "fair and just reason" to withdraw the plea. See State v. Krstoth, 138 Hawai'i 268, 276, 378 P.3d 984, 992 (2016) ("In this case, the record does not establish that Krstoth knowingly, intelligently and voluntarily waived his rights by changing his plea, as required by law. Therefore, 'fair and just reasons' existed for granting a withdrawal of his plea."). It does not follow, however, that the only permissible "fair and just reason" to withdraw a plea is the defendant's failure to enter the plea knowingly, intelligently, and voluntarily.

The State's argument would convert the well-settled "more liberal approach" applicable to motions to withdraw pleas prior to sentencing into a more restrictive and demanding

standard.  See Jim, 58 Haw. at 575-76, 574 P.2d at 522-23

(contrasting the "manifest injustice" standard for withdrawing a

plea subsequent to sentencing with "a more liberal approach" to

plea withdrawals prior to sentencing).  Under Jim, where the

State has not relied upon the guilty plea to its substantial

prejudice, "the motion should be granted if the defendant has

presented a fair and just reason for his request[.]"  Id. at

576, 574 P.2d at 523; see also State v. Costa, 64 Haw. 564, 565,

644 P.2d 1329, 1331 (1982) (noting that a defendant attempting

to withdraw a plea prior to sentencing "has the burden of

establishing plausible and legitimate grounds for the

withdrawal"); HRPP Rule 32(d) (providing that a motion to

withdraw a plea made within ten days of imposition of sentence

may be made "to correct manifest injustice").

     This difference between the "fair and just" standard

(applied to a motion to withdraw a plea made before sentencing)

and the "manifest injustice" standard (applied when the motion

is made after sentencing) is based on sound policy.  When a

motion to withdraw a plea has been made prior to sentencing, as

opposed to after sentencing, there is no "opportunity for the

defendant to test the severity of sentence before finally

committing himself to a guilty plea."  Jim, 58 Haw. at 576, 574

P.2d at 523 (quoting Sherman v. United States, 383 F.2d 837, 840

(9th Cir. 1967)).  In other words, in a motion to withdraw a

12

plea made prior to sentencing, the defendant cannot obtain a sentence and then move to withdraw the plea if he or she deems that sentence too severe. The effect of allowing a defendant to withdraw his or her plea prior to sentencing for any fair and just reason is to allow the defendant to pursue his or her constitutional right to trial on the original charges.

Here, Guity knew as he was entering his plea that he was pleading to a crime it was impossible for him to have committed. Guity maintains that he was entitled to withdraw his plea in the family court case because "it was legally impossible for him to have committed third-degree sexual assault of his wife[.]" Hence, he asserts:

> [Because] the plea in the Family Court Case and the plea in the Circuit Court Case cannot be viewed separately or in isolation of one another as they were part of a global plea agreement . . . which was not divisible . . . his pleas should be withdrawn in both the Family Court Case and the Circuit Court Case.

Guity aptly observes that this court has yet to consider whether a defendant's withdrawal of one plea entered pursuant to a single plea agreement that encompasses multiple charges and/or criminal matters necessarily permits him or her to withdraw all of the other pleas that were part of the same agreement. As noted, in so doing we consider whether Guity has established a fair and just reason for his request to withdraw his plea in the circuit court case. In Garcia, the failure of the government to comply with the terms of a plea agreement was

13

deemed a fair and just reason for the defendant to withdraw his guilty plea prior to sentencing. By analogy, in the instant case, the plea agreement was legally unenforceable through no fault of the defendant, thus demonstrating a fair and just reason for the withdrawal. The objective facts surrounding Guity's plea agreement adequately indicate that the agreement was meant to be a single agreement. In this case, the pleas in the circuit court case and the family court case were negotiated contemporaneously. The final plea agreement, which contained all of the terms and conditions relating to Guity's guilty pleas in both cases, was contained in one document.[5] Guity entered, and the circuit court accepted, both of his pleas at the same change of plea hearing. Further, at the change of plea hearing, the circuit court conducted most of the colloquy required under HRPP Rule 11 with respect to both of Guity's guilty pleas at the same time. On this record, the plea agreement in this case was clearly a global plea agreement.

The ICA held correctly that Guity was entitled to withdraw his guilty plea in the family court case because "the Circuit Court definitively knew that it was legally impossible for Guity to have committed third-degree sexual assault of his

---

[5]     Containment of the terms and conditions of both pleas in one document is a factor but not a requirement for determination of a global plea agreement.

wife[.]" Guity, 2016 WL 6427681 at *7. As explained above, the record in this case supports that Guity's guilty plea in the family court case was a component of a single agreement that included his plea in the circuit court case. Therefore, because Guity was entitled to withdraw his plea in the family court case, he was also entitled to withdraw his plea in the circuit court case.

As noted by Guity, the Supreme Court of Washington applied a similar analysis to analogous circumstances in State v. Turley, 69 P.3d 338 (Wash. 2003). In Turley, the defendant pleaded guilty to one count of escape in the first-degree ("escape count") and one count of conspiracy to manufacture methamphetamine ("conspiracy count") pursuant to a plea agreement. 69 P.3d at 340. At the plea hearing, the government erroneously represented that mandatory community placement was not required as part of the sentence on the conspiracy count. Id. The trial court accepted the defendant's pleas, and sentenced him to seventy-two months of imprisonment for the escape count and twelve months of imprisonment for the conspiracy count, which were to run concurrently with one another. Id.

Nearly three years after the defendant entered his plea, the government learned that the conspiracy count carried a mandatory sentence of twelve months of community placement, and

15

filed a motion to amend the judgment and sentence to include this term. Id. Subsequently, the defendant moved to withdraw both of his pleas. Id. The defendant argued that he was entitled to withdraw his plea to the conspiracy count because he was misinformed about the sentence he could receive on that offense. Id. Accordingly, the defendant asserted that because the plea agreement covered both the escape count and the conspiracy count, he was also entitled to withdraw his plea with respect to the escape count. Id. The trial court allowed the defendant to withdraw his guilty plea as to the conspiracy count, but not the escape count. Id. The Washington Court of Appeals affirmed. Id.

The Supreme Court of Washington reversed the Court of Appeals. Id. The Turley court highlighted that the defendant negotiated and pleaded to the two charges contemporaneously, that one document contained the plea to and conditions for both charges, that the trial court accepted both pleas at one hearing, and that at the hearing, the trial court advised the defendant of the consequences of his plea, but did not separate the consequences based upon the individual charges. Id. at 341-42. Consequently, the Supreme Court of Washington concluded that because the plea agreement was "one bargain, or . . . a 'package deal[,]'" and the defendant was entitled to withdraw his plea to the conspiracy count, the defendant should have also

16

been allowed to withdraw his plea to the escape count. Id. The Turley court thus remanded the case to the trial court with instructions to allow the defendant to withdraw his pleas to both counts. Id.

The Supreme Court of Washington's analysis in Turley is persuasive; we conclude that the plea agreement in this case was a "package deal." Because the ICA correctly held that Guity was entitled to withdraw his guilty plea in the family court case, the ICA should have also concluded that Guity was entitled to withdraw his guilty plea in the circuit court case.

To conclude, on the facts in this case, the ICA erred insofar as it held that Guity is not entitled to withdraw his guilty plea in the circuit court case. Rather, the circuit court should have allowed Guity to withdraw both of his pleas.

## IV. Conclusion

For the reasons stated above, we hold the circuit court abused its discretion in denying Guity's motion to withdraw both pleas. We vacate the ICA's November 21, 2016 judgment on appeal, the circuit court's March 5, 2012 judgment in the circuit court case, the circuit court's March 8, 2012 amended judgment in the family court case, and the circuit court's January 20, 2012 order denying Guity's motion to withdraw pleas. We remand to the circuit court with

17

instructions to accept Guity's withdrawal of both pleas and for further proceedings consistent with this opinion.

Shawn A. Luiz
(Brian A. Costa
on the briefs
and application)
for Petitioner

Stephen K. Tsushima
for Respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

