*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

Electronically Filed
Supreme Court
SCWC-19-0000439
04-JUN-2021
08:04 AM
Dkt. 13 OP

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

THEO PEDRO,
Petitioner/Defendant-Appellant.

SCWC-19-0000439

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-19-0000439; CASE NO. 2FFC-18-0000252(4))

JUNE 4, 2021

McKENNA, WILSON, AND EDDINS, JJ., WITH WILSON, J., ALSO
CONCURRING SEPARATELY, AND RECKTENWALD, C.J., CONCURRING IN PART
AND DISSENTING IN PART, WITH WHOM NAKAYAMA, J., JOINS

OPINION OF THE COURT BY EDDINS, J.

Theo Pedro ("Pedro") pleaded no contest to four counts of

sexual assault in the second degree.  Before sentencing, Pedro

moved to withdraw his pleas.  He said he was innocent.  He

wanted a trial. The Circuit Court of the Second Circuit (the "circuit court," "trial court," or "court") denied Pedro's motion. The Intermediate Court of Appeals (the "ICA") affirmed the circuit court's decision and we granted Pedro's application for certiorari.

Consistent with our "liberal approach" to deciding motions for plea withdrawal before sentencing, see State v. Jim, 58 Haw. 574, 576, 574 P.2d 521, 522-23 (1978), we conclude that Pedro presented a "fair and just reason" for the withdrawal of his pleas. The trial court erred in denying Pedro's motion. Accordingly, we vacate the Judgment of Conviction and Sentence and remand this case to the circuit court.

## I.   BACKGROUND

A June 2018 indictment charged Pedro with four counts of sexual assault in the first degree, attempted sexual assault in the first degree, sexual assault in the fourth degree, and kidnapping. Count 1 alleged:

> That on or about the 24th day of June, 2018, in the County of Maui, State of Hawaii, THEO PEDRO did knowingly subject another person to an act of sexual penetration by strong compulsion, to wit, by placing his finger into her genital opening, thereby committing the offense of Sexual Assault in the First Degree in violation of Section 707-730(1)(a) of the Hawaii Revised Statutes.[1]

---

[1] The remaining sexual assault in the first degree charges tracked the language of count 1. They differed only in the alleged conduct constituting sexual penetration by strong compulsion. Counts 2 and 4 described the act as "placing his penis into her genital opening;" count 3 as "engaging in the act of cunnilingus." Count 5 alleged an attempted act of sexual penetration by strong compulsion. Count 7, sexual assault in

2

The Family Court of the Second Circuit arraigned Pedro on July 2, 2018.[2]  Pedro appeared in custody with a deputy public defender and court-appointed Marshallese interpreter.  He said he spoke some English and had been in the United States since 2013.  Pedro's attorney waived reading of the indictment and entered not guilty pleas for Pedro.[3]  The court scheduled a September trial.

Defense counsel twice orally moved to continue the trial.  The court scheduled a February 25, 2019 trial.  Then the defense moved to compel discovery, seeking information purportedly "material to the preparation of the defense" from the Maui Police Department, the Children's Justice Center, and the Maui

the fourth degree, alleged sexual contact by compulsion.  The indictment did not define "strong compulsion" or "compulsion."

[2] The indictment was filed on June 29, 2018, in the Family Court of the Second Circuit and the family court arraigned Pedro.  But Pedro was neither the parent nor the guardian of his alleged victim, and the record does not suggest any other basis for the family court's jurisdiction under Hawaiʻi Revised Statutes ("HRS") § 571-14(a)(1).  Any potential jurisdictional defect is, however, immaterial.  The Circuit Court of the Second Circuit had jurisdiction under HRS § 603-21.5, and family courts are "divisions of the circuit courts of the State . . . "  HRS § 571-3.  In State v. Malave, 146 Hawaiʻi 341, 463 P.3d 998 (2020), we explained that since "circuit court judges sitting in family court have authority over both circuit and family matters," when a circuit court judge presides over a family court matter, it does not matter whether or not the family court has jurisdiction under HRS § 571-14(a).  Id. at 349, 463 P.3d at 1006.  We take judicial notice of the fact that Judge Richard T. Bissen, Jr. was appointed to the Circuit Court of the Second Circuit in 2005 and was serving as Chief Judge of the Circuit Court of the Second Circuit at the time he presided over Pedro's case.

[3] It is unclear whether Pedro received the indictment or reviewed it with counsel and the interpreter before the arraignment.  Pedro's counsel declared: "And, your honor, since I have received the indictment at this time waive reading.  Enter not guilty."

Department of the Prosecuting Attorney.

At the January 7, 2019 hearing on the motion to compel discovery, Pedro's counsel announced that the parties had reached a plea agreement: Pedro would plead no contest to amended charges of sexual assault in the second degree in counts 1-4 and the State would dismiss counts 5-7 (attempted sexual assault in the first degree, kidnapping, and sexual assault in the fourth degree). The plea agreement's sentencing disposition permitted the State to argue for, at most, concurrent ten-year terms of imprisonment. Pedro could argue for probation. The trial court was not bound to follow the plea agreement. It could ignore its terms.[4]

Pedro's decision to accept the plea agreement was unexpected, anticipated by neither defense counsel, nor the prosecutor, nor the court before January 7, 2019. Completion and review of "Form K," the Hawai'i Rules of Penal Procedure ("HRPP") standard change of plea document, happened shortly before Pedro entered the courtroom. Defense counsel represented that, with the interpreter's assistance, he and Pedro had reviewed the form, and a September 21, 2018 letter from the deputy prosecuting attorney detailing the proposed plea

---

[4] The plea agreement cautioned Pedro: "It is further understood that the sentence to be imposed upon the Defendant is within the sole discretion of the sentencing judge, and that this department does not make any promise or representation as to what sentence the Defendant will actually receive."

agreement.  Pedro had signed the form.

In court, defense counsel recited the plea agreement's terms.  The court asked Pedro whether he understood the terms.  Pedro replied, "Yes, your Honor."  The court advised: "Now, you have an interpreter with you here.  If you don't understand what I'm saying, and you wish to respond, you may do so in English.  If you need the assistance of the interpreter, she's there to help you as well."  A plea colloquy ensued.  Pedro addressed the court both in English and in Marshallese through the interpreter.  Pedro stated he was 33 years old and attended school "up until the ninth grade."  He felt clear minded.

The trial court's plea colloquy entailed reading each paragraph of Form K, the change of plea document, and asking Pedro whether the statement was true.

> The Court:  Two says, I have received a written copy of the original charges in this case.  The charges have been explained to me.  I understand the original charges against me.  Is that true?
>
> The Defendant:  Yes, sir.
>
> The Court:  I told my lawyer all of the facts I know about the case.  My lawyer explained the government's evidence against me, my possible defenses, and the facts which the government must prove in order to convict me.  Is that all true?
>
> The Defendant:  Yes, your Honor.
>
> The Court:  Item three reads, I understand the reduced charges of sexual assault in the second degree in counts one through four with which the government has agreed to charge me, instead of the original charges of sexual assault in the first degree.  Is that true?
>
> The Defendant:  Right, your Honor.

> The Court: Are you saying correct, I couldn't hear what you said.
>
> The Defendant: Yeah. Yes. Yes, your Honor.

The court continued reciting the plea form's numbered paragraphs. It asked Pedro to confirm his agreement with the form's statements. Pedro responded to each question with "Yes, your Honor" or a slight variation.

The court reviewed the plea agreement's terms with Pedro.[5] Pedro said he understood the agreement. Paragraph 8 of the change of plea form advised: "I know that the court is not required to follow any deal or agreement between the Government and me." The court made a sentencing inclination. It told Pedro, "if the Court were to grant prison or, um, order prison, that the Court would not exceed the State's recommendation with concurrent sentencing."

Before asking for Pedro's plea, the court summarized paragraph 11 of the change of plea form: "I'm signing this no contest plea form after I have gone over all of it with my lawyer, and while I will not be permitted to withdraw my plea, I am signing this form in the presence of my lawyer. I have no complaints about my lawyer. I am satisfied with what he has

---

[5] Later in the hearing, the circuit court also reviewed a "Sex Offender Addendum" with Pedro. Pedro acknowledged understanding, signing, and reviewing the document with his attorney. When asked whether he had read the form or had it interpreted for him, Pedro answered, "Correct, your Honor." The document advised Pedro that he would have to comply with Hawai'i's sex offender registration laws. Under HRS § 846E-10, Pedro would register as a sex offender for the rest of his life.

done for me."  The court asked Pedro whether these statements were true.  Pedro replied: "Yes, your Honor."

Pedro then entered no contest pleas to sexual assault in the second degree in counts 1-4.  Defense counsel stipulated "for purposes of the no contest plea and the no contest plea alone" to a factual basis supporting Pedro's pleas.

The court accepted Pedro's pleas.  It concluded Pedro voluntarily, knowingly, and intelligently entered his pleas.  Pedro signed the plea form, acknowledging "the Judge questioned me personally in open court to make sure that I knew what I was doing in pleading guilty or no contest and understood this form before I signed it."  The court found Pedro guilty of four counts of sexual assault in the second degree.

On March 3, 2019, defense counsel filed a Notice of Disclosure of Discovery Materials.  The Notice informed the State that counsel intended to share discovery materials with Pedro under HRPP Rule 16(e)(3).[6]  That rule states that an:

> attorney may provide the defendant with a copy of any discovery material obtained if the attorney notifies the prosecutor in writing and files a copy of such

---

[6] The notice read:

> Notice is hereby given that counsel for Defendant shall disclose copies of discoverable materials to Defendant pursuant to Hawaii Rules of Penal Procedure Rule 16 and an agreement with the prosecution that the copies shall redact sensitive personal information including, but not limited to, social security numbers, dates of birth, account numbers, telephone numbers, physical addresses, and identification of involved juveniles.

> intention with the court, and the prosecutor does not
> file a motion for protective order within 10 days of
> the receipt of the notice.

The court filed a stipulation and order regarding custody of discovery on March 14, 2019.[7]  The record does not indicate when defense counsel told Pedro of his right under HRPP Rule 16(e)(3) to possess the investigative reports in his case.  The record also reveals neither when Pedro requested his discovery materials from defense counsel, nor when defense counsel provided Pedro the materials.

Also on March 14, 2019, defense counsel moved to withdraw as counsel.  A two-paragraph declaration of counsel was all that supported the motion:

> 1.   I represent Defendant, Theo Pedro, in the above
> entitled case.  Mr. Pedro does not wish to have the Office
> of the Public Defender to represent him in this case and
> wishes to have a new attorney represent him.
>
> 2.   Counsel must withdraw from representation when
> discharged by the client.  Hawaii Rules of Professional
> Conduct Rule 1.16(a)(3).

The circuit court scheduled the hearing on the motion to withdraw as counsel on Pedro's sentencing date, March 29, 2019.  A presentence report was filed March 21, 2019.  On March 29 the court continued the hearing on the motion to

---

[7] The deputy prosecuting attorney and defense counsel signed the stipulation. It stated defense counsel notified the prosecuting attorney of an "intention to provide Defendant with a copy of any and all discovery material pursuant to Hawaii Rules of Penal Procedure 16(e)(3) . . . ."  The parties agreed that before defense counsel provided discovery to Pedro, he would redact confidential personal information.  The court approved the stipulation and protective order.

withdraw as counsel.[8]

On April 4, 2019, respective counsel and Pedro appeared, along with a court interpreter. Defense counsel revealed he had "another conversation" with Pedro "about his options and what he wishes to do." Defense counsel then disclosed the basis for his motion to withdraw as Pedro's counsel: Pedro wanted new counsel appointed to assist him with withdrawal of his pleas. Counsel stated that it was his "understanding that [Pedro] seeks to withdraw his no contest plea." Counsel continued: "given what was discussed, I would ask that the pending motion to withdraw as counsel be granted and that a substitute counsel can be appointed."

The trial court confirmed Pedro's desire to start the case "all over again" with new counsel. It asked him why he wanted new counsel. Pedro explained through the interpreter: "[M]y question is to have a new person come help me because I only worked a little bit of time with this lawyer." He told the court he needed a new lawyer to "[e]xplain to me and help me with this case" and "[e]xplain to me about everything because I did not understand."

The court granted the motion to withdraw as counsel. The written order stated Pedro "has or had a conflict with The

---

[8] The record omits a transcript of the proceeding. The court minutes state: "After discussion cont'd to 4/4/19, 8 am."

Office of the Public Defender." The court asked an attorney in the courtroom to represent Pedro. The attorney accepted the appointment. The court continued sentencing to May 10, 2019.

On May 3, 2019, Pedro's new attorney moved to withdraw Pedro's no contest pleas.[9] Counsel declared that Pedro "adamantly" maintained his innocence and wanted a trial. Counsel wrote that Pedro "did not fully understand his options at trial" and that prior counsel "did not fully explain his options in regard to a trial," had "only seen him in person briefly," and pressured him into changing his pleas by "insist[ing] that Defendant's only option was to accept the plea offer from the State."

The State opposed the motion. It cited State v. Gomes, 79 Hawai'i 32, 37, 897 P.2d 959, 964 (1995), for the proposition that there are "two fundamental bases of demonstrating 'fair and just reasons' for granting withdrawal of a plea: (1) the defendant did not knowingly, intelligently or voluntarily waive his or her rights; or (2) changed circumstances or new information justify withdrawal of the plea."

Referencing the court's plea colloquy and the signed change of plea form, the State argued Pedro entered his pleas intelligently, voluntarily, and knowingly. The State supported

---

[9] The motion was styled as a "motion to recall *nolo contendere* plea entered on 01/07/2019."

this claim by pointing to the fact that an interpreter was present both when Pedro reviewed the form with his lawyer and during the court's colloquy. The State also argued that there were no changed circumstances justifying the withdrawal of Pedro's pleas.

In Gomes, we held that a court abuses its discretion by denying a defendant's pre-sentence request for plea withdrawal where:

> (1) the defendant has never expressly admitted guilt; (2) the defendant advances a claim of new information or changed circumstances with factual support that, if believed by a reasonable juror, would exculpate the defendant; (3) there has been no undue delay in moving to withdraw the plea; and (4) the prosecution has not otherwise met its burden of establishing that it relied on the plea to its substantial prejudice.

Id. at 39, 897 P.2d at 966. The State used the four-part test we introduced in Gomes (the "Gomes test") to argue that Pedro was not entitled to withdraw his plea because he had not satisfied all four of these criteria. Addressing the Gomes test's second factor, the State argued: "Defendant has neither advanced a claim of new information nor changed circumstances. Furthermore, Defendant has failed to supply the requisite factual support that, if believed by a reasonable juror would exculpate the defendant." Regarding the fourth Gomes test factor, the State claimed the plea withdrawal would prejudice it because it had:

> learned there has been significant familial and cultural pressure put on [the complaining witness] and her family

11

> not to cooperate with this prosecution and blame her for
> the Defendant's actions during the time between Defendant's
> change of plea date and the March 29, 2019, sentencing
> date, when these claims began.[10]

The motion to withdraw plea hearing happened on May 10, 2019. Defense counsel characterized Pedro's no contest pleas as a "sudden change of heart" and "kind of a surprise to everyone." He shared that Pedro had continually insisted, "I am not guilty." Counsel stated: "He wants a trial now. He wants a trial. He wants the State to prove each and every element of the charge. These are all just the most fundamental constitutional rights. This is what is at stake today for him."

The State referred the court to its memorandum discussing Gomes. Regarding the "substantial prejudice" it faced if Pedro withdrew his plea, the State mentioned without attribution:

> I found out this morning, just this morning outside the
> courtroom, that the victim's mother is sick with cancer and
> she is returning to the Marshall Islands to be with her.
> And there is no indication that, um, when she is – is going
> back. That is not pressure. But it is prejudice.

The State also represented that the complaining witness faced "an extreme" amount of pressure. The deputy prosecuting attorney explained, "[y]es, there's always a cultural influence, but she had been willing to go a certain way. Now, it is completely . . . different." The State asserted that Pedro knew

---

[10] The State's opposition was supported by a declaration from the deputy prosecuting attorney. She declared that the information in the State's memorandum was true and correct to the best of her knowledge and belief.

of the shift in the complaining witness's willingness to testify and was "trying to withdraw this plea for the pure fact that he knows I do not have the victim at this time."

The trial court stated it had "meticulously" reviewed the change of plea form with Pedro.  It concluded Pedro entered his pleas knowingly, voluntarily, and intelligently.

The court then considered whether changed circumstances or new information justified withdrawal of Pedro's pleas.  It reasoned:

> the State [is] now asserting that someone has pressured the complaining witness to not cooperate, to not take part. That's not the change in circumstance that Gomes – State versus Gomes talked about.  The change in circumstance in State versus Gomes was somebody else coming forward and taking responsibility for the crime. . . .  But that's not the case we have.  We don't have a change in circumstance. We don't have a new thing.  What we have, if the . . . Court believes the State's argument is an uncooperating family pressure situation on the complaining witness.  And the defendant sees that as his opportunity. . . .  He's thinking, I can get better than that deal, because they don't have the witness now.

The court also found that "[o]nly after the presentence investigation was received did this motion . . . arise. . . . The withdrawal came about at sentencing.  That is undue delay." The court remarked: "He waited till sentencing after he reviewed the presentence investigation and then said, [']I changed my mind, I changed my mind.[']"  Finally, the court agreed with the prosecution that "there will be substantial prejudice to the State if the defendant is allowed to withdraw his plea, if their witness is no longer available."

13

The trial court denied Pedro's motion to withdraw his pleas.  It then asked the parties whether they wanted the sentencing hearing to begin.  The prosecution did.  The defense did not.  The court continued sentencing to May 14, 2019.

At the start of Pedro's sentencing hearing, defense counsel alerted the court to "possibly exculpatory evidence."  Counsel disclosed he had received information "yesterday" about the complainant recanting.  The defense called Pedro's mother, Joanne Pedro, to testify.[11]  Joanne Pedro testified she did not know the complainant, but that on May 11, 2019, her cousin Bonet told her that she had heard secondhand, from someone named Marilyn, that the complainant had said Pedro "didn't have anything to do with it, with the accusation – allegation."  Joanne Pedro further testified that the complainant also told Marilyn "it was not her [the complainant's] doing" and "it wasn't her . . . that made up the story."[12]

The deputy prosecuting attorney disputed Joanne Pedro's testimony.  She said the complainant had never recanted:

> Not once . . . has she ever changed her – changed her statement to me or any law enforcement or to anybody.  If it is to family, it's because of – of pressure and not what she – I've –  I've questioned her numerous times.  What she

---

[11] Although English was not her first language, Joanne Pedro testified in English.

[12] The court later clarified the testimony, asking Joanne Pedro: "Before I sentenced your son you wanted me to know that Bonet told you that Marilyn told her that [the complaining witness] said, it wasn't her, and whoever made up a story.  Is that correct?"  Pedro's mother replied, "Yes."

> said happened happened. There has never been a recantation in this case.

After the testimony, the defense counsel moved to continue the hearing. The court rejected the request; it observed that even if Joanne Pedro's testimony had been presented at the hearing on Pedro's motion for plea withdrawal, it "would not have made any difference;" the court still would not have allowed Pedro to withdraw his pleas.

Sentencing occurred. During his pre-sentence allocution, Pedro did not discuss sentencing matters. Instead, Pedro voiced dissatisfaction with his first lawyer. He explained why he wanted to withdraw his pleas. He spoke in English to explain that subsequent to the entry of his pleas — after he received his discovery for the first time — he decided to withdraw his pleas:

> Um, the reason why I did ask for, um a different lawyer, because like I said before, long time ago, I didn't believe that, um, my other lawyer was helping me. And I - I had hard time to figure out whether I want to take this to trial or because I never get my - my discovery yet. It was hard for me to decide because I don't know what was my charges. And after I went sign the deal, I just - that's when I, a day - couple days or weeks after, I got my discovery.

The court asked Pedro whether he wrote the letters it received from him in connection with his sentencing. Pedro stated he had.[13] The letters advanced a consent defense to the charged crimes. The court told Pedro: "You didn't write about a

---

[13] The record is unclear on what assistance, if any, Pedro received in drafting these letters.

burglary.  You didn't write about a shoplift.  You didn't write about a stolen car.  You wrote about having consensual sex with a 17 year old.  So you knew what the case was about; right?"  Pedro answered, "Yeah, but I never really know what the whole—" before the court interjected, "What did you think this case was about?"

Pedro said he read the police reports after he pleaded no contest.  "[A]fter I went sign the deal, that's when I just went – they just gave me one discovery."  He said: "for a long time I never know what was discovery was.  I – I – I was – everything that I just found out was learned from other inmates."  He insisted: "I – I wanted to go to trial right after I got my discovery.  That's why.  Because I found some false story on that."

The court asked Pedro if there was anything else he wanted to say before sentencing.  There was not.  The court sentenced Pedro to concurrent ten-year terms of imprisonment.

The court entered its findings of fact ("FOFs") and conclusions of law ("COLs") in June 2019.  In denying Pedro's motion to withdraw his plea, the court found that Pedro entered his pleas voluntarily, knowingly, and intelligently (FOF 2) and understood all the proceedings (FOFs 4, 5).  It further found that "[t]here was undue delay in the fact that Defendant waited until sentencing to request that his attorney be removed from

his case" (FOF 6), that "[t]here is no change of circumstance that would allow Defendant to withdraw his plea" (FOF 8), and that "the Defendant's motion to withdraw his plea, based on his counsel's understanding that the Complainant had recanted her allegations, lacks credibility and believability" (FOF 21).

Citing <u>Jim</u>, 58 Haw. at 576, 574 P.2d at 523, the court identified the "applicable standard" governing plea withdrawal before sentencing as "whether the 'defendant presented fair and just reason for his request and the State has not relied to its substantial prejudice'" (COL 3).

The trial court further concluded:

> COL 4. There are two fundamental bases of demonstrating "fair and just reasons" for withdrawal of plea: (1) the defendant did not knowingly, intelligently, or voluntarily waive his or her rights; or (2) changed circumstances or new information justify withdrawal of the plea. <u>State v. Gomes</u>, 79 Hawai'i 32, 37, 897 P.2d 959, 964 (1995); <u>see Jim</u>, <u>supra</u>.
>
> COL 5. The defense has the burden to prove there is a "fair and just reason" for granting the withdrawal of his plea and he has not met that burden in this case.
>
> COL 6. Defendant failed to establish that he did not waive his rights knowingly, intelligently, or voluntarily.
>
> COL 7. Defendant did waive his rights, when he signed the no contest plea form and plead no contest, knowingly, intelligently, or voluntarily.
>
> COL 8. A Change of Circumstance refers to a separate individual taking the blame for the crime the Defendant pled guilty or no contest to. There is no change of circumstance in this case.
>
> COL 9. The Court does not find the Defendant's mother credible, as to the information put forth by Defense Counsel that the Complainant recanted the allegations against the Defendant.
>
> COL 10. A recantation would entail the Complainant stating

17

that this was not a sexual assault but, a consensual sexual encounter. The information provided was that someone, other than the Complainant, made the information about the Defendant and the Complainant up. That is not a recantation by the Complainant.

COL 11. Based on Defendant's own handwritten letters to the Court the sexual encounter occurred between him and the Complainant.

COL 12. There was no recantation, no change of circumstances, and nothing in the testimony of Defendant's mother that requires a delay in sentencing for further investigation by Defense Counsel.

COL 13. The State has relied upon the no contest plea to its substantial prejudice.

On appeal, Pedro argued the trial court abused its discretion by (1) denying his motion to withdraw his no contest pleas; and (2) sentencing him to a ten-year term of incarceration. Pedro's opening brief challenged FOFs 2, 4, 5 and 6; and COLs 12 and 13.[14] He argued he was entitled to

---

[14] The State argued that Pedro's failure to challenge FOF 8, which stated "[t]here is no change of circumstance that would allow Defendant to withdraw his plea[,]" means that Pedro cannot prove "changed circumstances or new information justifying withdrawal of a no contest plea[.]" Pedro also failed to challenge COLs 6 and 7. The former provides: "Defendant failed to establish that he did not waive his rights knowingly, intelligently, or voluntarily." The latter provides: "Defendant did waive his rights, when he signed the no contest plea form and plead [sic] no contest, knowingly, intelligently, or voluntarily." Since Pedro did not challenge these COLs on appeal, the State argued, they were "a binding determination that Appellant failed to meet his burden to show he did not knowingly, intelligently, or voluntarily waive his rights when he pleaded no contest." Additionally, the State asserted that because Pedro failed to challenge COL 9 regarding Joanne Pedro's testimony, he had no "credible evidence" to support his claim that the complaining witness recanted her testimony. COL 9 provides: "The Court does not find the Defendant's mother credible, as to the information put forth by Defense Counsel that the Complainant recanted the allegations against the Defendant."

Hawaiʻi Rules of Appellate Procedure ("HRAP") Rule 28(b)(4) provides that an appellant's opening brief must contain:

> A concise statement of the points of error set forth in separately numbered paragraphs. Each point shall state: (i)

withdraw his pleas because "he did not understand his charges, he did not receive his copy of the discovery until post change of plea and there was an alleged complaining witness recantation that was not investigated." The State contested this argument.

In its Summary Disposition Order (SDO), the ICA evaluated Pedro's claims under each of the two "Gomes bases." See State v. Pedro, NO. CAAP-19-0000439 (App. Aug. 24, 2020) (SDO); see also Gomes 79 Hawai‘i at 37, 897 P.2d at 964 (identifying two "fundamental bases of demonstrating a 'fair and just reason' for the pre-sentence withdrawal of plea: (1) the defendant did not

---

the alleged error committed by the court or agency; (ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency.

Non-compliance with HRAP Rule 28(b)(4) offers sufficient grounds for the dismissal of the appeal. See Schefke v. Reliable Collection Agency, Ltd., 96 Hawai‘i 408, 420, 32 P.3d 52, 64 (2001). This court, however, has "consistently adhered to the policy of affording litigants the opportunity 'to have their cases heard on the merits, where possible.'" Morgan v. Planning Dep't, Cty. of Kauai, 104 Hawai‘i 173, 180-81, 86 P.3d 982, 989-90 (2004) (quoting O'Connor v. Diocese of Honolulu, 77 Hawai‘i 383, 386, 885 P.2d 361, 364 (1994)). In Marvin v. Pflueger, 127 Hawai‘i 490, 280 P.3d 94 (2012), we recognized that evaluating an appellant's arguments notwithstanding noncompliance with HRAP Rule 28(b)(4) was particularly appropriate where "the remaining sections of the brief provide the necessary information to identify the party's argument." Id. at 496, 280 P.3d at 94. See also Lesser v. Boughey, 88 Hawai‘i 260, 261 n.1, 965 P.2d 802, 803 n.1 (1998) (noting policy of permitting litigants to have their cases heard on the merits where possible and addressing the appellant's arguments even though appellant did not comply with HRAP Rule 28(b)(4) where it was "possible to discern the point of error upon which [the appellant] relies . . . .").

Notwithstanding Pedro's non-compliance with HRAP Rule 28(b)(4), we will address all of the issues raised by his appeal. This is appropriate given that Pedro's opening brief in the ICA implicitly challenges FOF 8 and COLs 6 through 9; the scope and nature of his challenges to this FOF and these COLs are obvious given his arguments about his entitlement to plea withdrawal.

knowingly, intelligently or voluntarily waive his or her rights; or (2) changed circumstances or new information justify withdrawal of the plea."). After reviewing the record and highlighting the signed change of plea form and the court's colloquy with Pedro before accepting his pleas, the court ruled:

> [W]e conclude that Pedro did not meet his burden of establishing a fair and just reason for withdrawal of his no contest plea under the first Gomes basis. We thus conclude that the Circuit Court did not abuse its discretion in ruling that Pedro failed to establish that he did not waive his rights knowingly, intelligently, or voluntarily when he entered his plea.

Pedro, SDO at 7.

Next, the ICA evaluated Pedro's contention that the discovery he received post-plea and the new information regarding the complainant's recantation were "fair and just" reasons for the withdrawal of his pleas. Like the trial court, the ICA rejected these arguments. It stated that in order for Pedro to satisfy the second prong of the Gomes test — "changed circumstances or new information" — Pedro would need to provide facts that if believed by a reasonable juror would exculpate him:

> These contentions appear to raise a claim under the second Gomes basis – that there were changed circumstances or new information that justified withdrawal of Pedro's plea. To withdraw a plea on this basis, Pedro must, as an initial matter, 'advance[] a claim of new information or changed circumstances with factual support that, if believed by a reasonable juror, would exculpate [him].['] Gomes, 79 Hawai'i at 39, 897 P.2d at 966.

Id. at 8.

The ICA explained that Pedro's arguments concerning his

20

belated receipt of his discovery fell short since "absent any indication in the record of the nature of the later-acquired 'discovery' or the 'false story' that it allegedly contained, Pedro did not advance a claim of new information with factual support that, if believed by a reasonable juror, would exculpate him." Id. (emphasis added).

Pedro's claim that the "recantation" constituted "new information or changed circumstances" that entitled Pedro to withdraw his pleas was likewise rejected. After concluding that Pedro did not present new information or changed circumstances with factual support that, if believed by a reasonable juror, would exculpate the defendant, the ICA declined to address Pedro's alleged undue delay in moving to withdraw his pleas or the prosecution's purported reliance upon the pleas. The ICA concluded: "Pedro failed to present a plausible claim of new information or changed circumstances under Gomes, and the Circuit Court did not abuse its discretion in denying Pedro's motion to withdraw his no contest plea on this basis. See [Gomes,] 79 Hawai'i at 36, 897 P.2d at 963." Id. at 10 (footnote omitted).

Pedro's application for certiorari was accepted. He reasserts his claim that the trial court abused its discretion by denying his motion to withdraw his no contest pleas. Pedro also argues that the ICA erred when it held that the court did

21

not abuse its discretion in sentencing him.

## II.  DISCUSSION

HRPP Rule 32(d) governs plea withdrawals.  It specifies that sentenced defendants who move for plea withdrawal within ten days after the imposition of sentence are entitled to withdraw guilty or no contest pleas to "correct manifest injustice."  It also provides that at any later time, a defendant seeking to withdraw a plea may do so only by petition pursuant to HRPP Rule 40.  But HRPP Rule 32(d) omits a standard controlling plea withdrawal *before* sentencing.  We introduced such a standard in Jim, explaining that courts evaluating pre-sentence requests for plea withdrawals should take a "liberal approach" and grant them "if the defendant has presented a fair and just reason for [the] request and the State has not relied upon the guilty plea to its substantial prejudice."  58 Haw. at 576, 574 P.2d 521 at 522-23 (emphasis added).[15]  See also State v. Sanney, 141 Hawai'i 14, 22, 404 P.3d 280, 288 (2017) (emphasizing that before sentencing and absent substantial prejudice to the prosecution, defendants may withdraw their plea and reclaim their constitutional rights for a "fair and just reason").

---

[15]  See also Kercheval v. United States, 274 U.S. 220, 224 (1927) (reasoning in dicta, "[t]he court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just.")(emphasis added).

22

"The defendant has the burden of establishing plausible and legitimate grounds for the withdrawal."  State v. Costa, 64 Haw. 564, 565, 644 P.2d 1329, 1331 (1982).

In Gomes, 79 Hawai'i 32, 897 P.2d 959, we identified two "fundamental bases" of demonstrating a "fair and just reason" for the pre-sentence withdrawal of plea: (1) the defendant did not knowingly, intelligently or voluntarily waive his or her rights; or (2) changed circumstances or new information justify withdrawal of the plea."  Id. at 37, 897 P.2d at 964.

The "fair and just reason" standard is more flexible and permissive than the "manifest injustice" standard governing post-sentencing plea withdrawals.  This distinction is based on "sound policy" since "when a motion to withdraw a plea has been made prior to sentencing, as opposed to after sentencing, there is no opportunity for the defendant to test the severity of sentence before finally committing himself to a guilty plea."  State v. Guity, 144 Hawai'i 557, 562, 445 P.3d 138, 143 (2019) (cleaned up).  Even more importantly, "[b]efore sentencing, the inconvenience to the court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury."  Kadwell v. United States, 315 F.2d 667, 670 (9th Cir.

1963).[16]

A criminal trial fully activates a defendant's rights to confront accusers, testify, or not testify, present a complete defense, and have the prosecution prove each element of the charged or included offenses beyond a reasonable doubt. With serious crimes, the right to a jury trial and unanimity attach. By pleading guilty or no contest, defendants renounce these core constitutional rights, forgo a public trial, and subject themselves to the government's punitive power. Given the significance of the constitutional rights waived by a guilty or no contest plea, the flexible and comparatively liberal approach we adopted in Jim favors allowing pre-sentence defendants to reclaim their constitutional rights and go to trial. See State v. Pokini, 55 Haw. 640, 656, 526 P.2d 94, 108 (1974) (noting that the right to trial by jury is "considered fundamental to our system of criminal justice.").

The trial court correctly identified Jim's "fair and just reason" standard as the controlling law. But it misapplied that

_____

[16] The ease with which the public interest in the finality of criminal pleas may yield to accommodate other values is illustrated by courts' near boundless power to unilaterally revoke plea agreements prior to sentencing. Courts may, at their discretion, unwind plea agreements either by rejecting the agreements' sentencing terms or by deciding to depart from a prior sentencing inclination. See Sanney, 141 Hawai'i at 16, 404 P.3d at 282 (stating "if a defendant pleads guilty or no contest in response to a court's sentencing inclination, but the court later decides not to follow the inclination, then the court must so advise the defendant and provide the defendant with the opportunity to affirm or withdraw the plea of guilty or no contest.").

law in evaluating Pedro's motion for plea withdrawal.  The trial court, and the ICA after it, considered whether Pedro's pleas were unknowing or involuntary and whether Pedro had presented new evidence or changed circumstances like those presented by the defendant in Gomes.  After determining Pedro's pleas were knowing and voluntary, rejecting Joanne Pedro's testimony about the complainant's recantation as non-credible, and finding undue delay and prejudice to the prosecution, the trial court concluded its "fair and just reason" analysis and denied Pedro's request.  It did not examine the totality of the circumstances to determine whether there was any fair and just reason for Pedro's plea withdrawal.

The trial court correctly concluded that Pedro's pleas were knowing and voluntary.  And it did not err in finding that the "new evidence" Pedro presented did not justify allowing his pleas' withdrawal.  But these determinations should be the beginning, not the end, of the "fair and just reason" inquiry.  Cf. Guity, 144 Hawaiʻi at 561, 445 P.3d at 142 ("[i]t is true that the failure of a defendant to enter a guilty plea knowingly, intelligently, and voluntarily will amount to a 'fair and just reason' to withdraw the plea. . . . It does not follow, however, that the only permissible 'fair and just reason' to withdraw a plea is the defendant's failure to enter the plea knowingly, intelligently, and voluntarily.").  Here, the trial

court misread <u>Gomes</u> and did not conduct the full "fair and just reason" inquiry required by <u>Jim.</u>  As such, the trial court's denial of Pedro's motion was an abuse of discretion because it "disregarded rules or principles of law or practice to the substantial detriment of a party litigant."  <u>State v. Enos</u>, 147 Hawai'i 150, 159, 465 P.3d 597, 606 (2020) (quoting <u>State v. Rapozo</u>, 123 Hawai'i 329, 336, 235 P.3d 325, 332 (2010)).

After reviewing the trial court and ICA's treatment of Pedro's plea withdrawal request, we clarify the scope of <u>Gomes'</u> holding and introduce a five-factor test to prospectively guide courts' consideration of whether there is a "fair and just reason" justifying plea withdrawal before sentencing.

**A.   The trial court correctly concluded Pedro's pleas were constitutionally valid**

The circuit court and the ICA correctly concluded that Pedro entered his no contest pleas knowingly, voluntarily, and intelligently.

A defendant's signature on Form K, the standard change of plea form, does not by itself render a plea constitutionally valid.  <u>See, e.g.</u>, <u>State v. Krstoth</u>, 138 Hawai'i 268, 378 P.3d 984 (2016).  But a signed Form K document does tend to show a plea was proper and its implications understood.  Here, Pedro signed the change of plea form after reviewing it and the prosecution's plea agreement letter with his attorney and an

26

interpreter.  Defense counsel certified in Form K's "Certificate of Counsel" that he had explained and reviewed the entire change of plea form with Pedro.

On the record, the court confirmed Pedro's age, educational background, English language skills, and clear, sound mind.  An interpreter was present.  Pedro addressed the court both in English and through the interpreter.  The court's plea colloquy systematically marched through each paragraph of Form K.  Depending on the paragraph, the court asked Pedro whether the statement was true or whether he understood the constitutional rights he was waiving.  Pedro acknowledged that the statements in the form were true.  He also represented that he understood the constitutional rights he was waiving.  Pedro responded, "Yes, your Honor" or some slight variation to each of the court's questions.  The court also reviewed the plea agreement's terms with Pedro.  Pedro said he understood the agreement and the consequences of his pleas.

After entering his pleas, Pedro signed the bottom of the plea form, acknowledging "the Judge questioned me personally in open court to make sure that I knew what I was doing in pleading guilty or no contest and understood this form before I signed it."  The court accepted Pedro's pleas.

The record shows that the court engaged in a sufficient plea colloquy.  Pedro's mind was clear.  He directly responded

27

to the court's questions.  He understood his constitutional rights and waived them.  The circuit court correctly concluded that Pedro entered his no contest pleas knowingly, voluntarily, and intelligently.

**B.    Gomes and Jim allow for pre-sentence plea withdrawal for any fair and just reason**

Underlying both the trial court's ruling and the ICA's SDO is a misapplication of our holding in State v. Gomes.  In Gomes, we considered whether the trial court had abused its discretion by denying a defendant's motion to withdraw his plea after the emergence of exculpatory evidence.  We held that a court abuses its discretion by denying a pre-sentence request for plea withdrawal where:

> (1) the defendant has never expressly admitted guilt; (2) the defendant advances a claim of new information or changed circumstances with factual support that, if believed by a reasonable juror, would exculpate the defendant; (3) there has been no undue delay in moving to withdraw the plea; and (4) the prosecution has not otherwise met its burden of establishing that it relied on the plea to its substantial prejudice.

79 Hawai'i at 39, 897 P.2d at 966.

The application of this four-part Gomes test is narrow.  It establishes one set of circumstances in which a trial court must grant a pre-sentence motion for plea withdrawal based on new circumstances that if believed by a jury would exculpate the defendant.  It does not provide any guidance for courts considering "new information or changed circumstances" that, though not exculpatory, may be a "fair and just reason" for plea

28

withdrawal. The four factors outlined in Gomes impose a floor, not a curb, on trial courts' discretion to grant a pre-sentence motion for plea withdrawal.

Some treatments of the Gomes test, however, have incorrectly framed it as circumscribing Jim's fair and just reason standard such that each of the test's four factors is a hurdle to be cleared by defendants seeking plea withdrawal before sentencing.[17] This approach is wrong. As Jim provided and our recent case law affirms:

> When a motion to withdraw a plea is made prior to sentencing, a more liberal approach is to be taken, and the motion should be granted if [1] the defendant has presented a fair and just reason for [the] request and [2] the State has not relied upon the guilty plea to its substantial prejudice.

Guity, 144 Hawai'i at 561, 445 P.3d at 142 (cleaned up). See also Sanney, 141 Hawai'i at 23-24, 404 P.3d at 289-90 (noting that Hawai'i has adopted standards consistent with the American Bar Association Criminal Justice Standards Standard 14-2.1, which provides that defendants should be allowed to withdraw pleas before sentencing for "any fair and just reason").

---

[17] For example, in State v. Fogel, 95 Hawai'i 398, 23 P.3d 733 (2001), we styled Gomes as setting forth "standards relating to pre-sentence plea withdrawal motions," without specifying that these factors are applied not in determining whether an exercise of discretion is appropriate, but rather in determining whether the court has abused its discretion by denying a pre-sentence motion for plea withdrawal. Id. at 402, 23 P.3d at 737. See also State v. Oshiro, No. 29375, (App. Nov. 30, 2010) (SDO) (affirming the denial of a motion to withdraw a plea pre-sentence and explaining that "one of the conditions that a defendant must satisfy to establish his or her entitlement to withdraw a no-contest plea based on new information or changed circumstances is that the new information or changed circumstances, if believed by a reasonable juror, would exculpate the defendant.")(cleaned up).

Citing Gomes and borrowing language from the second prong of the Gomes test, the ICA held that Pedro had not established changed circumstances or new information entitling him to withdraw his pleas because he "did not advance a claim of new information with factual support that, if believed by a reasonable juror, would exculpate him."  There are two problems with this reasoning.  First, it distorts the significance of the second prong of the Gomes test.  As discussed above, the Gomes test considers whether a trial court had abused its discretion by denying a defendant's pre-sentence motion for plea withdrawal.  It is not a checklist of conditions defendants must meet before they are entitled to withdraw their plea.  Second, under Jim, Pedro – like all defendants — is entitled to withdraw his plea before sentencing and reactivate the constitutional rights he waived upon a showing that the plea's withdrawal is justified by a fair and just reason.  The ICA disregarded this principle when it affirmed the trial court on the grounds that Pedro was not entitled to withdraw his pleas because he did not advance a claim of new information or changed circumstances "with factual support that, if believed by a reasonable juror, would exculpate him."

The trial court's conclusion that "[a] Change of Circumstances refers to a separate individual taking the blame for the crime the Defendant pled guilty or no contest to.  There

is no change of circumstances in this case" (COL 8) is similarly problematic. This conclusion transforms the facts at issue in Gomes – which involved a "separate individual taking the blame for the crime the Defendant [Gomes] pled no contest to" – into a standard to be met by defendants seeking plea withdrawal before sentencing. Our holding in Gomes was intended to ensure that no defendant advancing a "claim of new information or changed circumstances with factual support that, if believed by a reasonable juror, would exculpate them" is denied the right to a trial. It did not recalibrate Jim's fair and just reason standard in any way. The operative question for courts considering a defendant's HRPP Rule 32(d) request prior to sentencing is whether there is any fair and just reason for withdrawal, not whether the facts of a given case are similar to, or dissimilar from, those of Gomes.

The trial court did not err in concluding that the "possibly exculpatory evidence" Pedro produced — his mother's triple hearsay testimony about an alleged recantation by the complainant — did not constitute a "fair and just reason" for Pedro's plea withdrawal. But it did err by treating this conclusion as dispositive of whether there were *any* circumstances constituting a 'fair and just' reason for the pre-sentence withdrawal of Pedro's pleas. The absence of a "separate individual taking the blame for [the crimes Pedro

31

pleaded to]" does not mean that there was no other "fair and just reason" justifying the withdrawal of Pedro's pleas. After discounting Joanne Pedro's testimony, the trial court should have examined the totality of the circumstances to determine whether there was <u>any</u> fair and just reason justifying Pedro's plea withdrawal.

## C.   A multi-factor test for evaluating "fair and just reasons"

Motions for plea withdrawal made *before* sentencing or within ten days after the imposition of sentence *must* be granted – regardless of prejudice to the prosecution – if plea withdrawal is necessary to correct manifest injustice. <u>See</u> HRPP Rule 32(d). But our case law addressing when changed circumstances constitute a fair and just reason for a plea withdrawal outside circumstances showing manifest injustice is thin. Almost all of our cases involving plea withdrawal have involved either constitutionally-deficient pleas[18] or assertions of changed circumstances that are so manifestly unjust they would justify plea withdrawal *before or after* sentencing. <u>See,</u>

_____

[18] Guilty or no contest pleas that are made involuntarily or without the requisite knowledge are constitutionally invalid and manifestly unjust. <u>See, e.g.,</u> <u>State v. Nguyen</u>, 81 Hawai'i 279, 292, 916 P.2d 689, 702 (1996) ("Manifest injustice occurs when a defendant makes a plea involuntarily or without knowledge of the direct consequences of the plea."); <u>Wong v. Among</u>, 52 Haw. 420, 425, 477 P.2d 630, 634 (1970) (holding "[a] plea of guilty in itself is a conviction and a simultaneous waiver of several important constitutional guarantees . . .[ s]uch a waiver is not constitutionally acceptable unless made voluntarily and with full understanding of the consequences.").

e.g., State v. Merino, 81 Hawai'i 198, 226, 915 P.2d 672, 700 (1996) (rejecting the defendant's claim that there was a "fair and just" reason for the withdrawal of his plea in case where plea was knowing and voluntary); State v. Kealoha, 142 Hawai'i 46, 414 P.3d 98 (2018) (recognizing that manifest injustice occurs where a defendant makes a plea without knowledge of its direct consequences); Krstoth, 138 Hawai'i at 276, 378 P.3d at 992 (2016) (concluding that defendant was entitled to withdraw guilty plea before sentencing where record did not establish plea was knowing, intelligent, and voluntary); Guity, 144 Hawai'i at 563, 445 P.3d at 144 (2019) (holding plea agreement unenforceable because it was legally impossible for defendant to have committed one of the crimes); State v. Adams, 76 Hawai'i 408, 414, 879 P.2d 513, 519 (1994) (explaining "where a defendant is denied due process because the prosecution violates a plea agreement, 'there is 'manifest injustice' as a matter of law,' and the defendant 'is entitled to withdraw his guilty plea.'") (citation omitted); State v. Garcia, 135 Hawai'i 361, 351 P.3d 588 (2015) (holding that prosecutor's pre-sentence breach of plea agreement constituted a fair and just reason for plea withdrawal).

These cases offer little guidance to courts considering whether, absent manifest injustice, there is a "fair and just" reason for plea withdrawal before sentencing. In order to

prospectively facilitate this analysis, we introduce a five-factor test to guide trial courts in evaluating whether a fair and just reason supports a defendant's pre-sentence request for plea withdrawal.[19]

Courts evaluating an HRPP Rule 32(d) motion to withdraw a knowing and voluntary plea before sentencing should consider: (1) whether the defendant has asserted and maintained innocence; (2) the timing of the request for the plea withdrawal and the reasons for any delay; (3) the circumstances underlying the plea; (4) the defendant's nature and background; and (5) the potential prejudice to the prosecution caused by reliance on the plea.[20]

---

[19] Appellate courts interpreting and applying their analogous federal "fair and just reason" standard often rely on multi-factor tests to guide their analyses. See, e.g., United States v. Jordan, 759 F. Supp. 902, 904 (D.D.C. 1991) (identifying five factors that courts usually consider in evaluating whether "fair and just" reasons justify withdrawal of plea), aff'd, 43 F.3d 712 (D.C. Cir. 1994); United States v. Bazzi, 94 F.3d 1025, 1027 (6th Cir. 1996) (listing factors courts should consider in determining whether there is a "fair and just reason" for pre-sentence plea withdrawal); United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991) (identifying six factors that courts typically consider in determining whether a defendant has met his or her burden under Federal Rule of Procedure Rule 32(d)); United States v. Carr, 740 F.2d 339, 343 (5th Cir. 1984) (listing various factors and elements courts should consider in applying the "fair and just" reason standard).

[20] These factors are non-exclusive and courts applying them may still consider other factors that are relevant to the fair and just reason inquiry. See Jim, 58 Haw. at 579, 574 P.2d at 524 (instructing "[t]he trial court was entitled to consider the defendant's asserted reasons and the factual basis therefor against a background consisting of the earlier proceedings."); Gomes, 79 Hawai'i at 38, 897 P.2d at 965 (analyzing the reason Gomes provided for seeking withdrawal "against the background provided by earlier proceedings."). These factors are also to be considered collectively; the defendant need not show that each of the five factors individually weighs in favor of allowing withdrawal in order for there to be a "fair and just reason" for withdrawal. Further, in cases where the defendant has a

The evidentiary record concerning Pedro's pleas and his motion for their withdrawal is fully developed.  We are thus unpersuaded by the dissent's contention that the trial court is best positioned to apply our newly-introduced five-factor test to the facts of Pedro's case.  Cf. Nishimura v. Gentry Homes, Ltd., 134 Hawai'i 143, 338 P.3d 524 (2014) (adopting a "fundamental fairness" standard for resolving challenges to arbitrator selection provisions and applying it to the facts of the case before it); State v. Ontai, 84 Hawai'i 56, 929 P.2d 69 (1996) (adopting new definition of the "enterprise" element of HRS § 842-1 and analyzing the facts of the case before it in light of the new definition).

## D. Pedro presented a fair and just reason for the withdrawal of his pleas

Applying these five factors, we conclude that Pedro presented a "fair and just reason" for the withdrawal of his pleas.

### 1. Pedro asserts his innocence and has never admitted guilt

Our "liberal approach" to motions for plea withdrawal made before sentencing favors allowing plea withdrawal and the restoration of constitutional rights where a defendant has

---

particularly plausible and legitimate reason for withdrawal, courts may find a "fair and just reason" for withdrawal notwithstanding substantial prejudice to the prosecution.

asserted innocence and has never admitted guilt.  See State v. Smith, 61 Haw. 522, 523, 606 P.2d 86, 88 (1980) (reversing denial of HRPP Rule 32(d) motion where defendant had never "expressly admit[ted] that he committed the offenses charged in the indictment."); Gomes, 79 Hawai'i at 38, 897 P.2d at 965 (reversing denial of HRPP Rule 32(d) motion where defendant "never explicitly admitted that he committed the crimes for which he was charged and convicted.").  Though an assertion of innocence, standing alone, is not a "fair and just reason" for plea withdrawal,[21] an assertion of innocence by a defendant who has never admitted guilt weighs strongly in favor of allowing plea withdrawal before sentencing.

Pedro pleaded no contest.  He has never admitted guilt. Neither the plea agreement nor the change of plea form detailed a factual basis supporting his pleas.  No "confession" appears on the record.  Pedro did not, and was not required to, admit facts supporting the charges.  See State v. Deguair, 108 Hawai'i 179, 191, 118 P.3d 662, 674 (2005) (stating "there is no requirement that the court elicit a factual basis for a no contest plea.") (discussing State v. Merino, 81 Hawai'i at 219,

---

[21] But see Commonwealth v. Gordy, 73 A.3d 620, 630 (Pa. Super. Ct. 2013) (holding assertion of innocence in a pre-sentence motion for plea withdrawal was fair and just reason justifying plea withdrawal); Commonwealth v. Forbes, 299 A.2d 268, 272 (Pa. 1973) (holding that assertion of innocence by defendant who pleaded guilty was "fair and just" reason for plea withdrawal before sentencing).

915 P.2d at 693 (noting court is not required to make "such inquiry as shall satisfy it that there is a factual basis for the plea.")).

Pedro has asserted and maintained his innocence and has never admitted guilt.  Though not dispositive, this factor weighs *strongly* in favor of allowing Pedro to withdraw his pleas.[22]

### 2.   There was no undue delay

The presence or absence of undue delay impacts a defendant's entitlement to pre-sentence plea withdrawal.  See Gomes, 79 Hawaiʻi at 39, 897 P.2d at 966 (including absence of undue delay as a factor in multi-part test for evaluating whether court must grant a pre-sentence motion for plea withdrawal); Cf. United States v. Barker, 514 F.2d 208, 222 (D.C. Cir. 1975) (noting "[a] swift change of heart is itself strong indication that the plea was entered in haste and confusion; furthermore, withdrawal shortly after the event will rarely prejudice the Government's legitimate interests.").  The trial court faulted Pedro for the timing of his plea withdrawal request.  It suggested Pedro's motion was a ploy, motivated by

---

[22] Courts must look favorably on requests for plea withdrawal from defendants who have maintained their innocence and never admitted guilt, but the converse is not true.  The relevance of a defendant's admission of guilt to the fair and just reason analysis is context-dependent.  Even defendants who have pleaded guilty and admitted to crimes may still advance a "fair and just" reason for the withdrawal of their pleas.

the contents of the presentence report.  It stated: "Only after the presentence investigation was received did this motion . . . arise. . . . The withdrawal came about at sentencing.  That is undue delay."  The court continued: "[H]e waited till sentencing after he reviewed the presentence investigation and then said, [']I changed my mind, I changed my mind.[']"  The trial court concluded that there was an undue delay between Pedro's pleas and his request for their withdrawal.

Based on our review of the record, we conclude that Pedro did not unduly delay in requesting plea withdrawal.  This is true for three reasons.  First, the trial court advised Pedro during its plea colloquy that his plea was irreversible.  Second, the court's speculation about Pedro's motivations for seeking to withdraw his pleas is unfounded.  And third, Pedro's ability to explain the timing of his plea withdrawal request and the reasons for any delay was undermined by the court's failure to conduct a "penetrating and comprehensive inquiry" into the attorney-client relationship between Pedro and his lawyer after Pedro's counsel moved to withdraw.  See State v. Harter, 134 Hawai'i 308, 323, 340 P.3d 440, 455 (2014).

Paragraph 11 of Form K, the change of plea form Pedro signed, reads, in relevant part: "I know I will not be permitted

to withdraw my plea."[23]  Immediately before taking Pedro's pleas,
the court discussed paragraph 11 with Pedro.  It told him the
form said:

> I'm signing this no contest plea form after I have gone
> over all of it with my lawyer, and while I will not be
> permitted to withdraw my plea, I am signing this form in
> the presence of my lawyer.  I have no complaints about my
> lawyer.  I am satisfied with what he has done for me.

The court asked Pedro whether these statements were true.  Pedro
said they were.

Given the language in the plea form, the trial court cannot
be faulted for advising Pedro that he would not be "permitted to
withdraw [his] plea."  But Paragraph 11 of the plea form was
misleading because Pedro could seek to withdraw his pleas under
HRPP Rule 32(d).[24]  When Pedro tried to do just that, he was
faulted for not acting faster.  This is unfair given that Pedro

---

[23] Since the entry of Pedro's plea, Form K has been amended.  The revised
version of the Hawai'i criminal plea form (Form K) acknowledges that
defendants may, in some cases, withdraw their pleas.  It reads, in relevant
part: "I know I will not be permitted to withdraw my plea except in certain
limited circumstances."  SCRU-11-0000083, Order Amending Form K and Adopting
Form L of the Hawai'i Rules of Penal Procedure at 5 (emphasis added).

[24] HRPP Rule 32(d) provides:

> A motion to withdraw a plea of guilty or of nolo contendere
> may be made before sentence is imposed or imposition of
> sentence is suspended; provided that, to correct manifest
> injustice the court, upon a party's motion submitted no
> later than ten (10) days after imposition of sentence,
> shall set aside the judgment of conviction and permit the
> defendant to withdraw the plea.  At any later time, a
> defendant seeking to withdraw a plea of guilty or nolo
> contendere may do so only by petition pursuant to Rule 40
> of these rules and the court shall not set aside such a
> plea unless doing so is necessary to correct manifest
> injustice.

was told during the plea colloquy that it would be impossible for him to withdraw his pleas.

Second, the trial court's speculation about the presentence report's role in motivating Pedro's request to withdraw his pleas is unfounded. The record shows neither when Pedro received the presentence report, nor when he reviewed it with counsel and an interpreter. The record also offers no indication of how Pedro felt about the report's contents. It does indicate, however, that Pedro's desire to withdraw his pleas predated the March 21, 2019 filing of the presentence report: Pedro's attorney moved to withdraw as counsel on March 14, 2019, one week before the presentence report was filed. At the April 4, 2019 hearing on that motion, Pedro's counsel represented that the reason he filed the motion to withdraw as counsel on March 14, 2019, was that Pedro wanted to withdraw his pleas. Pedro's counsel stated:

> I just want to say on the record that, um, this morning with our interpreter today I had another conversation with Mr. Pedro about his options and what he wishes to do. Is my understanding that he seeks to withdraw his no contest plea. And given what was discussed, I would ask that the pending motion to withdraw as counsel be granted and that a substitute counsel can be appointed.

These statements undermine the trial court's theory about Pedro's inappropriate motives for seeking plea withdrawal. They suggest Pedro's desire to withdraw his pleas emerged at some

point[25] before the March 14, 2019 filing of the motion to withdraw as counsel.

Third and finally, the trial court's handling of the motion to withdraw as counsel likely compromised Pedro's ability to explain any "delay" in his request for plea withdrawal.

Withdrawal and substitution of counsel require "approval of the court."  HRPP Rule 57; see also Hawai'i Rules of Professional Conduct ("HRPC") Rule 1.16(c) ("A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation.").  Defendants do not have an automatic right to discharge counsel.  See State v. Torres, 54 Haw. 502, 504, 510 P.2d 494, 496 (1973) (advising that "there is no absolute right, constitutional or otherwise, for an indigent to have the court order a change in court-appointed counsel.").

Pedro's counsel's motion to withdraw was spare.  It declared that Pedro "wishes to have a new attorney represent him" and that "[c]ounsel must withdraw from representation when discharged by the client.  Hawai'i Rules of Professional Conduct Rule 1.16(a)(3)."[26]  The motion was not supported by a

---

[25] Counsel did not say when Pedro first expressed his desire to withdraw his pleas, but it can be reasonably inferred that Pedro did so at some point before his counsel moved to withdraw on March 14, 2019.

[26]  HRPC Rule 1.16(a)(3) provides, in relevant part: "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: . . . (3) the lawyer is discharged."

41

declaration or any evidence or argumentation.[27],[28]  At the April 4, 2019 hearing on the motion to withdraw as counsel, Pedro's counsel stated that Pedro wanted to withdraw his pleas.  He offered no other explanation for the motion to withdraw as counsel.  The court did not inquire into the nature of the relationship between Pedro and his lawyer.

Instead, and despite counsel's representation that Pedro wanted to withdraw his pleas, the court asked Pedro: "Did you want your new attorney to come here and do your sentencing for you?"  Pedro expressed a desire to have a new attorney represent him in a trial.  Pedro explained through the interpreter: "[M]y question is to have a new person come help me because I only worked a little bit of time with this lawyer."  He told the court he needed a new lawyer to "[e]xplain to me and help me

---

[27] The motion to withdraw as counsel in this case stands in marked contrast to that in Krstoth.  In Krstoth, a motion to withdraw as counsel was filed in anticipation of a HRPP Rule 32(d) motion.  Defense counsel and an interpreter visited the in-custody defendant to understand his rationale for requesting substitute counsel.  Krstoth's attorney explicitly informed the court of the basis for the motion to withdraw as counsel.  The attorney's declaration of counsel stated in relevant part: "[Krstoth] made several things clear: (a) that he felt pressured by me to accept the plea bargain offered by the State and plead 'guilty' to the charged offense; (b) that he did not understand all of his rights he had, including the right to a trial, because I did not make things clear to him; and (c) that he does in fact want to withdraw his previously entered 'guilty' plea and have a trial to contest the charge against him."  138 Hawai'i at 271, 378 P.3d at 987.  Unlike Krstoth's counsel, Pedro's deputy public defender declined to disclose the reasons for Pedro's dissatisfaction in the motion to withdraw as counsel.

[28] Sensitive information supporting a motion for withdrawal of counsel may be submitted to the court for in camera review.  See Hawai'i Electronic Filing and Service Rules Rule 8.2 ("Documents submitted for *in camera* review shall be maintained in JIMS under electronic security and made accessible to only the court, the appellate courts, and court staff until a court of competent jurisdiction orders otherwise.").

with this case" and "[e]xplain to me about everything because I did not understand." When asked by the court whether he "want[ed] to start this whole case all over again[,]" Pedro replied, "Yes." Other than saying Pedro wanted to withdraw his pleas, defense counsel remained silent throughout the hearing.

The trial court granted the motion to withdraw as counsel. Its one sentence order granting the motion stated: "Defendant has or had a conflict with The Office of the Public Defender."[29]

In Harter, we held that when an indigent defendant requests that appointed counsel be replaced, the "trial court has a duty to conduct a 'penetrating and comprehensive examination' of the defendant on the record, in order to ascertain the bases for the defendant's request." 134 Hawaiʻi 308, 323, 340 P.3d 440, 455 (2014). This "penetrating and comprehensive" inquiry into the status and quality of the attorney-client relationship and the source and depth of the defendant's dissatisfaction is essential to safeguarding the defendant's constitutional rights.[30] The

---

[29] Counsel with undivided loyalties may be unable to meet the constitutional standard of effective assistance of counsel. See Harter, 134 Hawaiʻi at 324, 340 P.3d at 456 (stating "[g]enerally, 'a conflict exists when an attorney is placed in a situation conducive to divided loyalties . . .'") (quoting Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir. 1991)). The court did not identify the conflict constituting good cause to grant the motion. But given that Pedro's attorney represented that Pedro's desire to withdraw his pleas was the basis for the motion to withdraw as counsel, it is an unremarkable inference that counsel and the court were concerned with divided loyalties arising from a potential ineffective assistance of counsel claim.

[30] Harter explained, "[t]his inquiry is necessary to protect the defendant's right to effective representation of counsel." 134 Hawaiʻi at 323, 340 P.3d

trial court did not ask Pedro or his attorney a single "probing and specific question[]" about the status of their attorney-client relationship.  See id. at 324, 340 P.3d at 456.  It made no inquiries into the frequency, scope, and tenor of the attorney-client interactions or the role of Pedro's desire to withdraw his pleas in causing the conflict between lawyer and client.

A robust Harter inquiry would have afforded Pedro the opportunity to discuss his conflict with his attorney and explain its effect on his ability to quickly move for withdrawal of his pleas.  Because the record does not contain an account of the conflict between Pedro and his attorney it is difficult to determine the extent to which that conflict was the root cause of Pedro's "delay" in requesting plea withdrawal.  Given that Pedro is not responsible for this gap in the record, we recognize the reasonable possibility that the conflict between Pedro and his original counsel contributed to Pedro's "delay" in requesting withdrawal of his pleas.

Collectively, the incorrect information Pedro received about the impossibility of plea withdrawal, the lack of evidence that the timing of Pedro's request for plea withdrawal was motivated by dissatisfaction with the sentencing report, and the

_____

at 455.

44

fact that Pedro's conflict with his counsel may have caused his "delay" in requesting withdrawal all weigh against finding that Pedro unduly delayed in requesting withdrawal of his pleas.

### 3. The circumstances underlying the pleas

Four features of the circumstances surrounding Pedro's pleas weigh in favor of allowing their withdrawal.

First, Pedro's pleas were spur of the moment. On January 7, 2019, Pedro was in custody and transported to court for a motion to compel discovery hearing. Neither defense counsel, nor the prosecution, nor the court anticipated that Pedro would accept the plea agreement. Counsel prepared a change of plea form at court. He reviewed it with Pedro and the interpreter shortly before entering the courtroom. Later, at the hearing on Pedro's motion to withdraw his pleas, Pedro's counsel characterized the pleas as "a sudden change of heart" and "kind of a surprise to everyone." Pedro's haste in entering his pleas weighs in favor of allowing their withdrawal. Cf. United States v. Barker, 514 F.2d at 222 (affirming denial of motions to withdraw guilty pleas where the pleas "were not ill-considered or offered in haste."); State v. Dicks, 57 Haw. 46, 59, 549 P.2d 727, 736 (1976) (Kobayashi, J., dissenting) (observing "'[a] swift change of heart is itself a strong indication that the plea was entered in haste and confusion; furthermore, withdrawal shortly after the event will rarely prejudice the Government's

45

legitimate interests.'") (quoting Barker, 514 F.2d at 222).

Second, Pedro's pleas were entered well in advance of trial. At the time Pedro pleaded no contest, the court had neither adjudicated any motions in limine nor empaneled jurors. No potential jurors had been summoned. Trial was not imminent. The judicial resources consumed by allowing Pedro to withdraw his pleas, reclaim his constitutional rights, and go to trial were near nil. The prosecution's argument that allowing the withdrawal of Pedro's pleas would undermine the efficient administration of justice is thus unconvincing.

Third, at the time he entered his pleas, Pedro did not possess the investigative reports detailing the evidence against him. Pedro had been imprisoned for more than eight months by the time defense counsel took steps to get Pedro the case's discovery materials. See supra Section I. The record reveals neither when Pedro first requested his discovery materials nor when he actually received the documents. But Pedro told the trial court that he did not receive his discovery materials until *after* he had pleaded no contest:

> Um, the reason why I did ask for, um a different lawyer, because like I said before, long time ago, I didn't believe that, um, my other lawyer was helping me. And I - I had hard time to figure out whether I want to take this to trial or because I never get my - my discovery yet. It was hard for me to decide because I don't know what was my charges. And after I went sign the deal, I just - that's when I, a day - couple days or weeks after, I got my discovery.

He continued: "for a long time I never know what was discovery

was. I – I – I was – everything that I just found out was learned from other inmates." He insisted: "I – I wanted to go to trial right after I got my discovery. That's why. Because I found some false story on that."

Pedro was not asked to discuss or clarify the "false story" he found in his discovery. But even so, Pedro's post-plea receipt of his discovery materials weighs in favor of allowing Pedro to withdraw his pleas since Pedro would have been better positioned to evaluate the benefits and drawbacks of surrendering his constitutional rights by pleading no contest if he had possessed his discovery beforehand.

Fourth, by withdrawing his pleas, Pedro would lose the protections of his plea agreement, which capped his potential prison term at ten years and left open the possibility of probation. If convicted of his original charges at trial, Pedro faced life imprisonment with the possibility of parole.[31] The difference between the maximum sentence Pedro was guaranteed under the plea agreement and the potential for life in prison he would face if he went to trial is significant: the fact that

---

[31] Pedro faced four counts of sexual assault in the first degree, one count of attempted sexual assault in the first degree, and one count of kidnapping. These are all class A felonies. HRS §§ 705-502, 707-720, 707-730. Each of these class A felonies is punishable by an indeterminate term of imprisonment of twenty years without the possibility of suspension of sentence or probation. HRS § 706-659. Pedro was also charged with sexual assault in the fourth degree, a misdemeanor, which carried a prison term of up to one year. HRS § 707-733. The court, after considering the factors set forth in HRS § 706-606, could order any terms of imprisonment imposed on Pedro to run consecutively, rather than concurrently. See HRS § 706-668.5.

Pedro sought to unravel his plea agreement notwithstanding the severe potential consequences of doing so lends plausibility and legitimacy to his request for plea withdrawal and supports allowing it.

### 4. Pedro's background weighs in favor of allowing plea withdrawal

A youthful defendant, or a defendant with limited mental faculties, education, or English-language proficiency may be poorly equipped to thoughtfully consider a plea's implications. See Smith, 61 Haw. at 523, 606 P.2d at 88 (considering teenage defendant's youth and eighth-grade education in determining there was a fair and just reason for the withdrawal of his guilty plea); State v. Phua, 135 Hawai'i 504, 513, 353 P.3d 1046, 1055 (2015)(explaining that a "'language barrier' between the defendant and the court is a 'salient fact' that puts the trial court on notice that a defendant's waiver [of the right to counsel] may be 'less than knowing and intelligent.'") (quoting State v. Gomez–Lobato, 130 Hawai'i 465, 471, 312 P.3d 897, 903 (2013).

Pedro was 33 years old and attended school "up until the ninth grade."[32]  He had been in the United States since 2013.

---

[32] Pedro received vocational training in "building and maintenance."  He also received a "diploma" from the "Windward School for Adult[]."  When asked whether the diploma he received was the equivalent of a GED, he replied "I guess so."

Pedro knew some English, but his first language was Marshallese.

During the plea colloquy, the court asked Pedro whether it was true that Pedro understood "the reduced charges of sexual assault in the second degree in counts one through four with which the government has agreed to charge me, instead of the original charges of sexual assault in the first degree."  Pedro said "Yes."  That was the extent of the discussion about the charges.[33]

The legal terminology surrounding different sexual assault charges can be complex.  Here, that complexity was exacerbated by the fact that the indictment — which charged Pedro with committing various sexual acts by "strong compulsion" and "compulsion" — did not define "strong compulsion" or "compulsion."[34]  Pedro's pleas were knowing and voluntary, but

---

[33] At Pedro's sentencing hearing, the trial court suggested that because Pedro had written three letters to the court in English about his case he "knew what the case was about."  This analysis equates "knowing what the case is about" with having a nuanced understanding of the criminal charges one faces. Pedro may have had a constitutionally adequate understanding of the charges he pleaded to, but that does not mean he had a sophisticated understanding of sexual assault in the second degree and the ways in which it is similar to, or different from, sexual assault in the first and fourth degrees.

[34] In State v. Aledo, No. CAAP-16-0000470 (App. Nov. 18, 2019) (SDO) — a case that post-dated Pedro's proceedings — the ICA observed that the common understanding and dictionary definition of the word "compulsion" significantly depart from the statutory definition of that term.  It concluded that an indictment charging attempted sexual assault in the second degree without defining the statutory term "compulsion" did not provide adequate notice of the charge.  No application for writ of certiorari was filed in Aledo.  Without endorsing or rejecting Aledo's holding, we note that the case illustrates the conceptual difficulty of understanding elements like "compulsion" and "strong compulsion."

given his education and linguistic background, his ability to strategically evaluate the risks and disadvantages of waiving his constitutional rights – particularly given that the charges were complex and only cursorily discussed during the plea colloquy – was sub-optimal.  This factor thus weighs in favor of allowing Pedro to withdraw his pleas.

5.  **The withdrawal of Pedro's pleas would cause only minor prejudice to the prosecution**

In evaluating whether there is a "fair and just reason" for plea withdrawal, the court should "weigh any prejudice to the prosecution caused by reliance on the defendant's plea."  Sanney 141 Hawai'i at 22, 404 P.3d at 288 (quoting The American Bar Association's Criminal Justice Standards Standard 14-2.1(a)).  The approach we introduce here considers prejudice to the prosecution in determining whether a "fair and just reason" for withdrawal exists, rather than conducting a discrete prejudice inquiry only if the defendant has shown a fair and just reason for withdrawal.  Contra Jim at 576, 574 P.2d at 522-23.  In some cases, even a showing of substantial prejudice to the prosecution may be outweighed by other factors strongly favoring withdrawal.

In the State's opposition to Pedro's motion for plea withdrawal and at the hearing on that motion, the deputy prosecuting attorney declared, based on a conversation with the

complaining witness and her aunt and uncle, that there was "significant familial and cultural pressure put on [the complainant] and her family to not cooperate with this prosecution and blame her for the defendant's actions." At the hearing, the deputy prosecuting attorney also stated:

> I found out this morning, just this morning outside the courtroom, that the victim's mother is sick with cancer and she is returning to the Marshall Islands to be with her. And there is no indication that, um, when she is – is going back. That is not pressure. But it is prejudice.

Four days later, at Pedro's May 14, 2019 sentencing hearing, the deputy prosecuting attorney emphasized that despite the "pressure" faced by the complaining witness, she had never recanted: "Not once . . . has she ever changed her – changed her statement to me or any law enforcement or to anybody. . . . What she said happened happened. There has never been a recantation in this case."

The "prejudice" shown by the prosecution is minimal and does not weigh strongly against allowing withdrawal of Pedro's pleas. This is true for three reasons.

First, uncooperative witnesses are an unexceptional feature of criminal cases; to the extent that the complaining witness *was* reluctant to testify, that reluctance may inconvenience the State, but it was not caused by Pedro's pleas. Cf. United States v. Greer, 956 F. Supp. 525, 529 (D. Vt. 1997) (holding that criminal defendant was not prejudiced by pre-indictment

delay during which the State secured the cooperation of previously uncooperative witnesses because it was not shown "that the delay caused these individuals to cooperate.") (emphasis added).

Second, the mere possibility that the complainant may be unavailable at trial is speculative and insufficient to establish that plea withdrawal would prejudice the State. See Commonwealth v. Gordy, 73 A.3d 620, 628 (Pa. Super. Ct. 2013) (reasoning that "[s]peculation about harm that might possibly arise does not establish prejudice so as to deny a pre-sentence motion to withdraw a guilty plea."). Our opinion in Gomes is instructive. In Gomes, we held that, notwithstanding an affidavit from the prosecution stating that one of its witnesses had expressed a desire to move to an undetermined location, the State had not shown it would be substantially prejudiced by the withdrawal of Gomes' plea. 79 Hawaiʻi 32, 897 P.2d 959. The mere fact that "the passage of time might make it even more difficult for the prosecution to locate [a prosecution witness]" did not, we held, mean that Gomes was "required to forfeit his fundamental right to a jury trial." Id. at 40, 897 P.2d at 967.

Third and finally, the evidentiary support for the prosecution's claims concerning prejudice is relatively weak. There are no signed declarations from the complaining witness or her family members describing the "pressure" she faced, her

reluctance to testify against Pedro, or her plans to move to the Marshall Islands.  Cf. United States v. Yazzie, 998 F. Supp. 2d 1044, 1119-1120 (D.N.M. 2014) (finding that government would be prejudiced by plea withdrawal in case where there were affidavits from alleged victims indicating their desire to recant or change their testimony).  The prosecution also declined to present in-court witness testimony.

The deputy prosecuting attorney did declare that there had been "significant familial and cultural pressure put on [the complainant] and her family to not cooperate with [the] prosecution."  But that declaration was dated May 9, 2019, and five days after that, at the May 14, 2019 sentencing hearing, the deputy prosecuting attorney told the court that she had not spoken to the complaining witness in two months.[35]  Moreover, at the sentencing hearing, the deputy prosecuting attorney told the court that the complaining witness had never recanted her story or "changed her statement" to the deputy prosecutor.

For the foregoing reasons, the potential of prejudice to the prosecution weighs only slightly against allowing withdrawal

---

[35] Notably, the State's contention concerning "cultural pressure" was also vague and unsubstantiated.  The deputy prosecuting attorney did not claim any personal or specialized knowledge of the complaining witness's "culture." And the record contains no declarations from the complaining witness or her family members describing the cultural constructions of blame or victimhood within their community or the "cultural pressure" faced by the complainant. It is thus unclear what "evidence" the State considered in determining that the complainant faced "cultural pressure."  The record leaves open the possibility that this claim is ill-defined stereotype masquerading as legal argument.

of Pedro's pleas.  As such, and given Pedro's assertion and maintenance of innocence, the timing and circumstances surrounding Pedro's pleas and their withdrawal, and Pedro's nature and background, we conclude that on balance there is a "fair and just reason" for the withdrawal of Pedro's pleas.

### III. CONCLUSION

The constitutional right to a public trial activates other fundamental constitutional rights.  Our liberal approach to pre-sentence requests for plea withdrawal favors allowing the restoration of these rights.  Pre-sentence defendants are entitled to withdraw their pleas for any "fair and just reason."

The trial court disregarded this principle by denying Pedro's request to withdraw his pleas, reclaim his constitutional rights, and go to trial.  This denial was an abuse of discretion.  We vacate the ICA's September 28, 2020, Judgment on Appeal and the trial court's May 15, 2019 Judgment; Conviction and Sentence.[36]  The case is remanded to the trial court for proceedings consistent with this opinion.

| | |
|---|---|
| Shawn A. Luiz,<br>for petitioner | /s/ Sabrina S. McKenna |
| | /s/ Michael D. Wilson |
| Richard B. Rost,<br>for respondent | /s/ Todd W. Eddins |



---

[36] Because we vacate the circuit court's judgment and sentence, we decline to address Pedro's contention that the circuit court abused its discretion by sentencing Pedro to an indeterminate ten-year term of imprisonment.